[No. 29666-7-II. Division Two. January 28, 2004.]

WASHINGTON CEDAR & SUPPLY CO., INC., *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

908

*Jerald A. Klein*, for appellant.

*Christine O. Gregoire, Attorney General*, and *David I. Matlick, Assistant*, for respondent.

SEINFELD, J. — The Department of Labor and Industries (L&I) cited Washington Cedar and Supply (Washington Cedar) for failing to ensure that its employees were wearing fall restraints when they delivered materials onto the roof of a construction site. The Board of Industrial Insurance Appeals (Board) upheld the citation and the superior court affirmed the Board's ruling. Holding that (1) a partial panel of the Board had the power to review the citation; (2) the Board appropriately declined to apply the unpreventable employee misconduct defense; and (3) the L&I inspector correctly categorized the offense as a "repeat serious violation"; and finding no error in the Board's decision, we also affirm.

## FACTS

Washington Cedar sells and delivers roofing materials to construction sites in Washington. On October 18, 1999, two

Washington Cedar employees were delivering materials onto a roof at a construction site. The employee standing on the roof was not wearing fall restraints or fall arrest gear.

An L&I inspector arrived at the site and documented the employees' activities. L&I subsequently issued a citation to Washington Cedar for failing to ensure that its employees were wearing fall restraints when working at heights over 10 feet.

The inspector labeled the violation a "repeat violation" based on L&I records showing two prior fall protection violations by Washington Cedar within three years of the instance at issue. The inspector labeled the violation "serious" because she believed serious physical harm could result if a fall occurred at that height. RCW 49.17.180(6).

Washington Cedar appealed the citation to the Board. An Industrial Appeals Judge (IAJ) initially vacated the citation but on review by the Board, two of the three Board members considered the case and reinstated the citation. A superior court judge affirmed the Board's decision.

## DISCUSSION

### I. PARTIAL PANEL REVIEW UNDER RCW 49.17.140

■ On review of the IAJ decision, two of the three Board members signed a Decision and Order upholding Washington Cedar's citation. Washington Cedar argues that RCW 49.17.140 does not permit partial panel review. This is a matter of statutory construction, which we review de novo. *Children's Hosp. & Med. Ctr. v. Dep't of Health*, 95 Wn. App. 858, 864, 975 P.2d 567 (1999).

■ The Board hears two types of appeals: (1) industrial insurance appeals governed by chapter 51.52 RCW, and (2) Washington Industrial Safety and Health Act (WISHA) appeals governed by chapter 49.17 RCW. In this WISHA appeal, we look to RCW 49.17.140 to determine the required procedure for Board review. Under this statute, the

Board may "make disposition of the issues in accordance with procedures relative to contested cases appealed to the state board of industrial insurance appeals." RCW 49-.17.140(3).

This provision incorporates the controlling procedures for Board review under RCW 51.52.106. RCW 51.52.106 allows Board review "by a panel of at least two of the members of the board . . . . The decision and order of any such panel shall be the decision and order of the board." RCW 51.52.106; *also see* WAC 263-12-155. RCW 49.17.140 therefore permits partial panel review based on the incorporation of review procedures enumerated in RCW 51.52.106.

### II. UNPREVENTABLE EMPLOYEE MISCONDUCT DEFENSE

■ Washington Cedar asserts that the violative conduct of its employees was unpreventable and unforeseeable, and therefore it should not be held accountable. Under RCW 49.17.120(5), there is an affirmative defense of "unpreventable employee misconduct" that allows an employer to avoid liability upon the following showing:

(i) A thorough safety program, including work rules, training, and equipment designed to prevent the violation;

(ii) Adequate communication of these rules to employees;

(iii) Steps to discover and correct violations of its safety rules; and

(iv) Effective enforcement of its safety program as written in practice and not just in theory.

We review whether Washington Cedar has met its burden as a question of fact under a substantial evidence standard. *Miller v. City of Tacoma*, 138 Wn.2d 318, 323, 979 P.2d 429 (1999). " 'Substantial evidence' is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 712, 732 P.2d 974 (1987).

For help in deciding cases where there is an absence of state law on point, the Board looks to the Occupational

Safety and Health Administration (OSHA) and consistent federal decisions. *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 147, 750 P.2d 1257 (1988); 29 U.S.C. §§ 651-78 (Occupational Safety and Health Act of 1970). In 1990, the Board decided *Jeld-Wen* and placed the burden of proving the elements of the affirmative defense on the employer. *In re Jeld-Wen of Everett*, No. 88 W144, Bd. of Indus. Ins. Appeals (Oct. 22, 1990); *Brock v. L.E. Myers Co.*, 818 F.2d 1270, 1276 (6th Cir. 1987).

While there is a significant split among the federal circuit courts as to which party should bear the burden of proof,[1] the Board specifically followed the Sixth Circuit decision in *Brock*, which emphasized that the employer must show that the safety program is effective "in practice as well as in theory." 818 F.2d at 1277. Washington subsequently adopted a statute laying out the elements of the unpreventable employee misconduct defense that mirrors the language in *Brock*. RCW 49.17.120(5)(a)(iv).

■ The Board determined here that Washington Cedar had not met RCW 49.17.120(5)(a)(iv)'s requirement of effective enforcement. It based this decision on evidence showing Washington Cedar's prior fall protection violations and its failure to enforce elements of the safety program. Thus, substantial evidence supports the Board's decision.

Washington Cedar asserts that the Board wrongly interpreted RCW 49.17.120(5) as allowing the unpreventable employee misconduct defense only where the violation is characterized as an "isolated occurrence." But the Board's interpretation of RCW 49.17.120(5) was not this narrow.

■ We review an agency's statutory interpretation under an error of law standard, which allows us to substitute our interpretation of the statute for the Board's. *St. Francis*

---

[1] *Danco Constr. Co. v. Occupational Safety & Health Review Comm'n*, 586 F.2d 1243 (8th Cir. 1978); *cf. Pa. Power & Light Co. v. Occupational Safety & Health Review Comm'n*, 737 F.2d 350 (3d Cir. 1984); *Capital Elec. Line Builders of Kan., Inc. v. Marshall*, 678 F.2d 128 (10th Cir. 1982); *Ocean Elec. Corp. v. Sec'y of Labor*, 594 F.2d 396 (4th Cir. 1979); *Cent. of Ga. R.R. v. Occupational Safety & Health Review Comm'n*, 576 F.2d 620 (5th Cir. 1978); *Brennan v. Occupational Safety & Health Review Comm'n*, 511 F.2d 1139 (9th Cir. 1975).

*Extended Health Care v. Dep't of Soc. & Health Servs.*, 115 Wn.2d 690, 695, 801 P.2d 212 (1990). But we give substantial weight to an agency's interpretation of statutes and regulations within its area of expertise. *St. Francis Extended Health Care*, 115 Wn.2d at 695.

■ The "isolated occurrence" language stems from agency and judicial interpretation of the "effective enforcement" prong of the unpreventable employee misconduct defense. RCW 49.17.120(5)(a)(iv). The Board and federal courts have concluded that in order for the enforcement of a safety program to be "effective," the misconduct could not have been foreseeable. *Jeld-Wen*, No. 88 W144; *Brock*, 818 F.2d at 1277 (stating that the violation must have been "idiosyncratic and unforeseeable"); *Austin Bldg. Co. v. Occupational Safety & Health Review Comm'n*, 647 F.2d 1063, 1068 (10th Cir. 1981); *Mineral Indus. & Heavy Constr. Group v. Occupational Safety & Health Review Comm'n*, 639 F.2d 1289, 1293 (5th Cir. 1981).

As a result, the Board has determined that prior citations for similar conduct may preclude the defense because those prior violations provide notice to the employer of the problem, thereby making repeat occurrences foreseeable. But it appears that the existence of prior violations does not absolutely bar use of the unpreventable employee misconduct defense; it merely is evidence that the employee conduct was foreseeable and preventable.

L&I classified Washington Cedar's two prior final violations as "fall protection" violations. This classification indicates that these violations were similar; therefore, the current citation was not an isolated occurrence. Although this fact may not constitute conclusive evidence that the employee misconduct was foreseeable and preventable, it does provide sufficient evidence to support the Board's conclusion. Further, it was supported by additional evidence that Washington Cedar was not effectively enforcing other elements of its safety program. Thus, Washington Cedar has not shown that the Board erred when it rejected the unpreventable employee misconduct defense.

III. ESTABLISHING A REPEAT, SERIOUS WISHA VIOLATION

Washington Cedar asserts that L&I has not made a prima facie case showing of a WISHA violation nor shown that the violation was "serious" or a "repeat" within the meaning of the regulations.

A. PRIMA FACIE CASE FOR A WISHA VIOLATION

■ ■ Washington Cedar first argues that L&I has not made a prima facie case for a "repeat serious violation" of WAC 296-155-24510. In construing WISHA regulations, we may consider the federal counterpart, OSHA, and its judicial interpretation. *Adkins*, 110 Wn.2d at 147. To demonstrate a prima facie serious violation of a safety standard under OSHA,

> the Secretary must prove that (1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) "there is a substantial probability that death or serious physical harm could result" from the violative condition.

*D.A. Collins Constr. Co. v. Sec'y of Labor*, 117 F.3d 691, 694 (2d Cir. 1997) (citations omitted) (quoting 29 U.S.C. § 666(k)). To establish a violation of OSHA, the secretary of labor has the burden to prove each element by a preponderance of the evidence. *Carlisle Equip. Co. v. United States Sec'y of Labor & Occupational Safety*, 24 F.3d 790, 792 (6th Cir. 1994). Washington Cedar asserts that L&I has not proved the first, fourth, or fifth elements by a preponderance of the evidence.

■ We apply the substantial evidence standard when reviewing the Board's factual determinations. *Miller*, 138 Wn.2d at 323. Because we give deference to an agency's factual findings in its area of expertise, we will uphold the Board's findings unless they are clearly erroneous. *Ass'n of Rural Residents v. Kitsap County*, 141 Wn.2d 185, 195-96, 4 P.3d 115 (2000).

*1. Does the cited standard apply?*

Washington Cedar first argues that the standard in WAC 296-155-24510 does not apply here because the fall height did not exceed 10 feet and, even if it did, the low-pitched roof exception applies.

In its Decision and Order, the Board found that Washington Cedar's employee was loading material onto the roof "at a height in excess of 10 feet." Clerk's Papers (CP) at 303. The site inspector's testimony supported this finding, as she measured the fall height at approximately 16 feet. Although Washington Cedar submitted contrary evidence showing that the employees believed the height to be approximately nine feet, the inspector's testimony provides substantial evidence to support the Board's determination.

Washington Cedar also contends that the Board erred in not applying the "low-pitched roof" exception. WAC 296-155-24515, -24503. A low-pitched roof is defined as one that has "a slope equal to or less than 4 in 12" rise over run. WAC 296-155-24503. WAC 296-155-24515(2)(b) provides an alternative to the requirement that employees working at a height of over 10 feet wear fall restraints when employees are "engaged in roofing on low-pitched roofs less than 50 feet wide"; if this is the case, employees may "elect to use a safety monitor system without warning lines." WAC 296--155-24515(2)(b).

The L&I inspector testified that she believed the roof at issue was a "5 or 6-pitched roof" and would not qualify for the low-pitched roof exception. Board Report of Proceedings (BRP) at 52. She had not measured the pitch of the roof, and neither party submitted conclusive evidence.

The Board concluded that the roof was not low pitched within the meaning of WAC 296-155-24515(2)(b), based on the inspector's testimony and the lack of evidence provided by Washington Cedar. Moreover, WAC 296-155-24515(2)(b) provides an exception only if there is some other safety monitoring system in place, and Washington Cedar did not

show that such a system was in place here. WAC 296-155--24515(2)(b). Thus, the Board's rejection of the low-pitched roof exception was not clearly erroneous.

### 2. Should Washington Cedar have known about the violation?

Washington Cedar's employees claimed that they did not have fall restraints with them because they left their gear in another truck at the Washington Cedar yard. Washington Cedar argues that under these circumstances, the evidence was insufficient to show that it had direct knowledge of the violation or in any way sanctioned the violative conduct.

L&I responds that repeat citations for the same safety violation should put an employer on notice that it is not effectively enforcing its safety program. Thus, absent changes in the safety program or increased enforcement measures, the employer should anticipate continued violations. L&I also argues that Washington Cedar had the responsibility to ensure that its employees had appropriate safety gear when they left the yard and, if they did not, it should have known that the employees would be violating the safety rules when making their delivery.

■■■ We agree that the evidence of similar past violations was sufficient to support a finding that Washington Cedar was on notice that its employees were not complying with its safety requirements. Because of the discretion we give to the agency as fact finder, we will not disturb the Board's conclusion that the employer should have been aware of the violation.

### 3. Do the facts show that serious harm may have resulted?

Washington Cedar next argues that L&I has not shown "a substantial probability that death or serious physical harm could result" from the violative condition. RCW 49.17.180(6). But the L&I inspector testified that serious physical harm, including broken or sprained limbs and

temporary hospitalization, could result from a fall from a roof over 10 feet in height.

B. CHARACTERIZATION OF THE VIOLATION AS "SERIOUS"

 Washington Cedar contends that the Board's categorization of the violation as "serious" was an error of law. We review the Board's interpretation of RCW 49.17.180(6) de novo. *Stuckey v. Dep't of Labor & Indus.*, 129 Wn.2d 289, 295, 916 P.2d 399 (1996).

Under RCW 49.17.180(6), a serious violation exists

> if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such work place, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

Washington Cedar argues that the regulation requires assessment of the *likelihood* of an injury resulting from the violation. L&I responds that the appropriate inquiry is how serious the injury could be *if* some harm resulted from the violation.

In a recent case, this court interpreted the language of RCW 49.17.180(6) and determined that "the statute's 'substantial probability' language refers to the likelihood that, should harm result from the violation, that harm could be death or serious physical harm." *Lee Cook Trucking & Logging v. Dep't of Labor & Indus.*, 109 Wn. App. 471, 482, 36 P.3d 558 (2001). This construction of the statute is consistent both with the federal interpretation of OSHA and with L&I's reading of RCW 49.17.180(6). 29 U.S.C. § 666(j); *Lee Cook*, 109 Wn. App. at 478.

L&I introduced evidence that a fall could result in "[b]roken bones, severe strains, sprains, [and/or] short-term hospitalization." BRP at 83. This supports the conclusion that a fall from over 10 feet could result in serious physical harm and, therefore, the violation was "serious" under RCW 49.17.180(6).

This result also resolves Washington Cedar's claim that the violation was de minimus. A de minimus violation is one that has "no direct or immediate relationship to safety or health." RCW 49.17.120(2). Because a fall here could have resulted in serious physical harm, Washington Cedar's argument that the violation was de minimus fails.

C. CHARACTERIZATION OF THE VIOLATION AS "REPEAT"

Washington Cedar further maintains that it was error to characterize the violation as "repeat" because there is insufficient evidence that prior violations were similar to the current incident.

WAC 296-27-16001(9)[2] defines "repeat violation" as one that "has previously been cited to the same employer when it identifies the same type of hazard." L&I has the authority to issue a citation for a repeat violation if it has issued any final safety violations of the same type within three years of the current citation. WAC 296-27-16007(5).[3]

██ L&I gave Washington Cedar two final citations within the three years preceding the October 1999 violation. L&I and the Board characterized these as "fall protection violations." CP at 303. L&I also described the violation at issue here as a fall protection violation.

Given the evidence that Washington Cedar committed prior, similar violations and considering the deference we accord the Board's findings, we cannot say that the Board's finding of a repeat violation was clearly erroneous.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HUNT, C.J., and HOUGHTON, J., concur.

Review denied at 152 Wn.2d 1003 (2004).

---

[2] WAC 296-27-16001 was in effect at the time of the violation and citation, but was repealed, effective August 1, 2000. St. Reg. 00-11-098.

[3] WAC 296-27-16007 was in effect at the time of the violation and citation but was repealed, effective August 1, 2000. St. Reg. 00-11-098.