185 P.3d 646 (2008)
ASPLUNDH TREE EXPERT COMPANY, Appellant,
v.
WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, Respondent.
No. 60138-5-1.
Court of Appeals of Washington, Division 1.
June 9, 2008.
*648 Jeremy L. Fellows, Attorney at Law, Beaverton, OR, for Appellant.
Beverly Norwood Goetz, Office of The Atty. Gen., Seattle, WA, for Respondent.
ELLINGTON, J.
¶ 1 A company cutting trees is engaged in logging and must adhere to logging safety regulations. Unpreventable employee misconduct is an affirmative defense to a violation of these regulations. Here, substantial evidence supports the findings of the Board of Industrial Insurance Appeals that Asplundh Tree Expert Company was clear-cutting trees, violated two logging regulations, and waived its right to raise affirmative defenses. We affirm.

BACKGROUND
¶ 2 Puget Sound Energy hired Asplundh Tree Expert Company to "perform line clearance and right-of-way maintenance work" on its energy transmission and distribution corridors. Exhibit 20. On April 8, 2005, Asplundh workers were clear-cutting trees near Novelty Hill Road in Redmond to create a new transmission line corridor parallel to and about 100 feet from an existing transmission line. Lawrence Markee, safety compliance officer for the Department of Labor and Industries (Department), conducted a site inspection.
*649 ¶ 3 Markee observed a "typical logging operation": loaded log trucks, a processor that strips and cuts felled trees, a "feller buncher" and other equipment used exclusively for logging. Report of Proceedings (Mar. 13, 2006) at 9, 12. He saw a worker walking on a log without calked boots or shoes with spiked soles that prevent slipping, and he noticed two workers standing 90 feet apart felling trees at least 125 feet tall.
¶ 4 After consulting with a Department logging and forest products safety specialist, Markee cited Asplundh for violation of two logging safety regulations: WAC 296-54-51170(3), which requires workers to wear calked boots, and WAC 296-54-539(1)(b), which requires workers felling timber to stand at least two tree lengths apart. The Department assessed a $540 penalty.
¶ 5 Asplundh appealed. The Board of Industrial Insurance Appeals (BIIA) and the superior court affirmed the citation.

ANALYSIS
¶ 6 When we review BIIA rulings, we stand in the same position as the superior court. Dep't of Labor and Indus. v. Tyson Foods, Inc., 143 Wash.App. 576, 178 P.3d 1070, 1073, ¶ 12 (2008). We review BIIA's interpretation of agency regulations de novo, though we give great weight to an agency's interpretation of a regulation within its area of expertise. Id. ¶ 13. We look first to the plain language of the regulation, interpreting it within the context of the entire statutory scheme. Id. Regulatory definitions apply, and any undefined terms are given their ordinary dictionary definition. Id. We review BIIA findings of fact for substantial evidence, which is evidence in sufficient amount to persuade a fair-minded person that the finding is true. RCW 49.17.150(1); Martinez Melgoza & Associates, Inc. v. Dep't. of Labor and Indus., 125 Wash.App. 843, 847-48, ¶ 8, 106 P.3d 776 (2005).
¶ 7 Asplundh does not challenge the relevant facts: workers were clearing a right-of-way so Puget Sound Energy could build a new power transmission line; the existing power line was at least 100 feet from the edge of the new right-of-way; workers were using logging equipment and truckloads of logs left the site each day; and the trees being felled were approximately 125 feet tall.
¶ 8 The BIIA judge applied the logging regulations in WAC 296-54 based on the nature of the activities observed at Novelty Hill and the electrical regulation's definition of line-clearance tree trimming. WAC 296-54-501 "establishes safety practices for all types of logging, log road construction and other forest activities using logging machinery and/or power saws regardless of the end use of the wood." Loggers must wear sharp-calked boots while walking on logs, and they must stand at least two tree lengths apart when felling trees. WAC 296-54-51170, -539.
¶ 9 Asplundh contends the applicable regulations were those found in WAC 296-45, the electrical regulations, which do not require workers to wear calked boots or stand two tree lengths apart. WAC 296-45-015 governs "the operation and maintenance of electric power generation, control, transformation, transmission, and distribution lines and equipment," including line-clearance tree trimming, which is defined as "[t]he pruning, trimming, repairing, maintaining, removing, or clearing of trees or the cutting of brush that is within 10 feet . . . of electric supply lines and equipment." WAC 296-45-035. Work related to power generation "may be subject to additional rules and regulations depending upon the nature of the work being performed." WAC 296-45-015(4).
¶ 10 Asplundh's argument is that its work constituted line-clearance tree trimming under the electrical regulations. According to Asplundh, line-clearance trimming occurs whenever trees being removed are tall enough to strike power lines as they fall. Asplundh bases its argument upon WAC 296-54-539(5), which prohibits loggers from felling trees that can "strike any line in the logging operation." The company argues this means loggers may not fell trees that could strike electrical lines and thus the electrical safety regulations must govern.
¶ 11 The BIIA judge rejected this argument, as do we. The logging regulations address the precautions required when trees *650 have the potential to strike power lines.[1] And the logging regulations define many types of lines, such as "guyline," "standing line," "strawline," "mainline," "skyline," "slackline," and "skidding line." Read in the context of the entire chapter, the phrase "any line in the logging operation" refers to these types of lines, not to electrical transmission lines. Further, Asplundh's position ignores the definition of line-clearance tree trimming, which is confined to activity "within 10 feet . . . of electric supply lines and equipment." WAC 296-45-035. There was no tree work occurring within 10 feet of the existing power line. Logging, on the other hand, is broadly defined to include "other forest activities using logging machinery." WAC 296-54-501.
¶ 12 Asplundh also argues that the definition of line clearance tree trimming does not apply because its workers were qualified employees, but the definition applies to both qualified and non-qualified employees. See WAC 296-45-015(1)(e)(i), (ii).
¶ 13 Next, Asplundh argues the electrical regulations conflict with the logging regulations. If an electrical regulation conflicts with a regulation in another chapter, the electrical regulation applies "so long as the work being done is power generation, transmission, and distribution installations, including related equipment for the purpose of communication or metering, which are accessible only to qualified employees." WAC 296-45-015(7).
¶ 14 Asplundh's argument fails on two grounds. Asplundh was clearing a right-of-way, not installing a transmission line. More importantly, there is no conflict among the regulations. The electrical regulations neither prohibit the wearing of calked boots nor allow trees to be felled within two lengths of each other.
¶ 15 Thus, we agree with the BIIA. The electrical regulations "cannot be interpreted to control logging operations performed by a tree-trimming company." Certified Appeal Board Record at 20. Asplundh was subject to WAC 296-54-51170 and 296-54-539.
¶ 16 Asplundh next contends the Department failed to prove it violated WAC 296-54-51170, because the evidence did not support a finding that the workers were Asplundh employees and/or did not show the workers were not wearing nonslip boots, which are allowed where they are safer than calked boots:
(3) All employees whose duties require them to walk on logs or boomsticks must wear sharp-calked boots, or the equivalent.
. . . . EXCEPTION 2:
The employer may allow employees to wear nonslip boots instead of calks when the nonslip boots provide greater employee protection than calks (such as at scaling stations, log sorting yards, etc.). The nonslip boots must still provide firm ankle support and secure footing.
WAC 296-54-51170.
¶ 17 The Department first responds that the exception to the requirement of calked boots cannot apply when workers are walking on logs. The language of the regulation does not support this argument, and we reject it.
¶ 18 The Department also argues, however, that Asplundh, as the party seeking the benefit of the exception, bears the burden of proving the workers were wearing more protective nonslip boots. No Washington cases or BIIA decisions address which party bears the burden of proving an exception to a safety regulation. But we may look for guidance to decisions interpreting the Washington statute's federal counterpart, the Occupational Safety and Health Act, 29 U.S.C. chapter 15. Inland Foundry Co., Inc. v. Dep't of Labor & Indus., 106 Wash.App. 333, 336, 24 P.3d 424 (2001). Federal decisions assign the burden of proof to the party seeking the benefit of the exception. Sec'y of Labor v. A.E.Y. Enterprises, Inc., 21 O.S.H. Cas. (BNA) 2147, 2005 O.S.H.D. (CCH) P32885, 2007 WL 962966 (O.S.H.R.C.); Sec'y of Labor v. C.J. Hughes Constr., Inc., 17 *651 O.S.H. Cas. (BNA) 1753, 1995-1997 O.S.H.D. (CCH) P31129, 1996 WL 514965 (O.S.H.R.C.). Asplundh therefore bore the burden of proof. As Asplundh failed to put forth any evidence on the subject, its argument fails.
¶ 19 As to whether the Department demonstrated that the workers were employees of Asplundh, Inspector Markee testified that he saw trucks at the site with Asplundh logos, that he met with Trip Good, an Asplundh supervisor, and that at Good's direction, the men violating the logging regulations stopped work while Markee concluded his inspection. Further, it is undisputed that Asplundh had the contract to clear the right-of-way. This evidence is sufficient to support the finding that the workers were Asplundh employees.
¶ 20 Asplundh next contends the workers did not violate the distance regulation because the trees had only "face cuts," indicating the workers were "preparing trees to be felled," not felling them. Br. of Appellant at 23. This argument is specious. Face cuts are the same as undercuts, notches cut in a tree to guide the direction of the fall. WAC 296-54-505. The regulation detailing the procedures for felling trees provides that undercuts "must not be made while other workers are in an area into which the tree could fall." WAC 296-54-53910. And cutters "must place an adequate undercut and leave enough holding wood to ensure the tree will fall in the intended direction." Id. § (11). Under the regulations, making undercuts, or face cuts, is part of felling.
¶ 21 Finally, Asplundh contends it should have been allowed to offer testimony to support a finding of unpreventable employee misconduct.[2] Asplundh offered this evidence at the hearing, but the BIIA judge ruled Asplundh had waived its right to raise affirmative defenses because it expressly disavowed such defenses at the scheduling conference. Asplundh contends unpreventable employee misconduct is not an affirmative defense. We disagree.
¶ 22 A statutory exception is an affirmative defense unless the statute reflects legislative intent to treat proof of the absence of the exception as one of the elements of a cause of action, or the exception operates to negate an element of the action. Kastanis v. Educational Employees Credit Union, 122 Wash.2d 483, 493, 859 P.2d 26 (1993). Here, RCW 49.17.120(5)(a) expressly places the burden of proof on the employer: the employer "must show the existence of" the elements of the unpreventable employee misconduct defense. Relevant Washington cases concur. See J.E. Dunn Northwest, Inc. v. Dep't of Labor & Indus., 139 Wash. App. 35, 46, 156 P.3d 250 (2007); Washington Cedar & Supply Co., Inc. v. Dep't of Labor & Indus., 119 Wash.App. 906, 911, 83 P.3d 1012 (2003).
¶ 23 Contrary to Asplundh's assertion, the defense does not negate an element of the Departent's prima facie case  that the employer knew or should have known of the violation.[3] The defense addresses situations in which employees disobey safety rules despite the employer's diligent communication and enforcement. It defeats the Department's claim, even when the Department has proven all the elements of a violation, including knowledge thereof.[4] The case cited by Asplundh, Brennan v. Occupational Safety & Health Review Comm., 511 F.2d 1139 (9th Cir.1975), is inapposite. The Brennan court was deciding which party bore the burden of *652 proving the employer knew of the violation. That issue is unrelated to whether an employer is excused from a violation because it resulted from unpreventable employee misconduct.
¶ 24 We reject the appellant's arguments and affirm.
WE CONCUR: GROSSE and BECKER, JJ.
NOTES
[1] The regulation requires, for example, "[s]omeone must be designated to observe proper clearance and to give timely warning for all operations," and "[a]ll overhead wires shall be considered energized." WAC 296-54-529(4), (5).
[2] Under RCW 49.17.120(5), it is a defense to a safety violation if an employer can show it has a thorough safety program, communicates safety rules to its employees, takes steps to discover and correct rule violations, and actively enforces safety rules.
[3] To prove serious violations, the Department has the initial burden to present sufficient evidence that (1) the cited standard applies; (2) the standard was not met; (3) employees were exposed or had access to the unsafe condition; (4) the employer knew or should have known of the violation; and (5) there is a substantial probability that death or serious physical harm could result. Washington Cedar & Supply Co., 119 Wash.App. at 914, 83 P.3d 1012.
[4] See BLACK'S LAW DICTIONARY 430 (7th ed.1999) (defining affirmative defense as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true").