# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| POTELCO, INC., | ) | No. 72845-8-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF LABOR AND INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | FILED: October 5, 2015 |

TRICKEY, J. — The Washington State Department of Labor and Industries issued a $700 citation to Potelco, Inc., following Potelco's efforts to replace a damaged utility pole in Issaquah, Washington. Potelco appealed the citation to the Board of Industrial Insurance Appeals (Board) where it unsuccessfully argued that the citation was as a result of "unpreventable employee misconduct." The Board upheld the citation. The King County Superior Court affirmed the Board on administrative appeal. Finding no error, we affirm.

## FACTS

Potelco provides services related to power lines.[1] At approximately 10:00 p.m. on August 4, 2011, a Potelco crew responded to a report of a broken power pole along Tiger Mountain Road in Issaquah. An automobile collision had caused the pole to break, which had left high voltage power lines, as well as the damaged pole, either on or in close proximity to the ground. In response, Puget Sound Energy asked Potelco to replace the damaged pole and to move the wires from the damaged pole to a replacement pole.

---

[1] "BR" indicates citation to the certified appeal board record. When citation to witness testimony is made, the witness's last name will follow "BR."

The responding Potelco crew consisted of foreman Bill Enger, linemen Jeff Richartz and James Waters, and apprentice Scott Hendrickson. After arriving, the Potelco crew held a safety meeting where they reviewed the work to be performed. Enger and Richartz then placed tags on poles to the south and north of the worksite to indicate that the crew was working on the section of power line between the tagged poles. Subsequently, Waters and Hendrickson installed bracket grounds on the power line both north and south of the damaged pole. Known as "bracket grounding," this process connects power lines to the ground for the purpose of directing any electrical current through the bracket grounds and into the ground so that any current would not make contact with members of the repair crew.[2] Once the "bracket grounding" was completed, Waters and Richartz began untying the power line from the damaged pole.[3]

At that point, Enger and Hendrickson returned to their trucks, which were parked near the damaged pole. Enger planned to reposition his truck so that he could shine his headlights on the damaged pole to improve visibility. As Enger drove by the worksite, Waters, who was untying the power line, lost his balance and fell backward onto the road. Enger's vehicle struck Waters. Unfortunately, Waters' injuries were fatal.

Following an investigation of the worksite, the Washington State Department of Labor and Industries (Department) issued Potelco a citation for a "serious violation" of WAC 296-45-345(3) for failing to establish an "equipotential zone" (EPZ).[4] WAC 296-45-345(3) is as follows: "Equipotential zone. Temporary protective grounds shall be placed at such locations and arranged in such a manner as to prevent each employee from being

---

[2] Clerk's Papers (CP) at 3.
[3] CP at 3.
[4] BR at 42.

2

exposed to hazardous differences in electrical potential." The Department assessed a $700 citation for the violation.

On May 7, 2012, Potelco appealed the citation to the Board of Industrial Insurance Appeals (Board). There, Potelco conceded that its crew had failed to establish an EPZ at the worksite as required by WAC 296-45-345(3), but asserted the affirmative defense of "unpreventable employee misconduct" under RCW 49.17.120(5),[5] arguing that it should not be held responsible for the misconduct of its employees.

On August 27, 2013, the Board issued a proposed decision and order affirming the citation, wherein it rejected Potelco's affirmative defense.

Potelco filed a timely petition for review. On October 15, the Board issued a final decision, including findings of fact and conclusions of law and an order affirming the citation. The Board made two findings of fact concerning the affirmative defense asserted by Potelco; each finding is at issue in this appeal:

> 7.    On August 4, 2011, and August 5, 2011, Potelco's safety program was not thorough, and equipment necessary to implement the required protective grounding was not provided to all workers.
>
> 8.    On August 4, 2011, and August 5, 2011, Potelco's safety program and its rules were not adequately communicated to its employees.[6]

In conclusion of law 5, the Board rejected Potelco's affirmative defense, concluding that

---

[5] This provision is as follows:
(5)(a) No citation may be issued under this section if there is unpreventable employee misconduct that led to the violation, but the employer must show the existence of:
(i) A thorough safety program, including work rules, training, and equipment designed to prevent the violation;
(ii) Adequate communication of these rules to employees;
(iii) Steps to discover and correct violations of its safety rules; and
(iv) Effective enforcement of its safety program as written in practice and not just in theory.

[6] BR at 3.

3

"[t]he violation of WAC 296-45-345(3) that occurred on August 4, 2011, and August 5, 2011, was not the result of unpreventable employee misconduct within the meaning of RCW 49.17.120(5)."[7]

Potelco appealed to the King County Superior Court, as permitted in the Washington Industrial Safety and Health Act (WISHA), chapter 49.17 RCW. The court found that substantial evidence supported the Board's findings. The court adopted the findings and the Board's conclusions of law. The court entered findings of fact, conclusions of law, and judgment against Potelco, and ordered it to pay the penalty of the citation, which amounted to $700, as well as a statutory attorney fee of $200.

Potelco appeals.

## ANALYSIS

On appeal, Potelco assigns error to the superior court's adoption of the Board's findings of fact 7 and 8, arguing that these findings are not supported by substantial evidence. Potelco further assigns error to the court's adoption of the Board's conclusion of law 5, arguing that the challenged findings do not support the conclusion. We disagree.

In a WISHA appeal, we review a decision by the Board directly, based on the record before the agency. Mowat Constr. Co. v. Dep't of Labor & Indus., 148 Wn. App. 920, 925, 201 P.3d 407 (2009). The Board's findings of fact are conclusive if supported by substantial evidence when viewed in light of the record as a whole. RCW 49.17.150(1); RCW 34.05.570(3)(e); Mt. Baker Roofing, Inc. v. Dep't of Labor & Indus., 146 Wn. App. 429, 433, 191 P.3d 65 (2008). "Substantial evidence" is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise. Mowat Constr., 148

---

[7] BR at 4.

Wn. App. at 925. All evidence is viewed in the light most favorable to the prevailing party and all reasonable inferences are drawn in favor of the same. Frank Coluccio Constr. Co. v. Dep't of Labor & Indus., 181 Wn. App. 25, 35, 329 P.3d 91 (2014). If the Board's findings of fact are supported by substantial evidence, we will then review the Board's conclusions of law to determine whether they are appropriate based on the findings of fact and whether the findings support the conclusions. Mt. Baker Roofing, 146 Wn. App. at 433.

"The Department bears the initial burden of proving a WISHA violation." Frank Collucio Constr., 181 Wn. App. at 36. However, under WISHA, an employer may choose to assert an affirmative defense to liability by claiming that a violation was caused by "unpreventable employee misconduct," rather than any wrongdoing by the employer. RCW 49.17.120(5); Wash. Cedar & Supply Co., Inc. v. Dep't of Labor & Indus., 119 Wn. App. 906, 911, 83 P.3d 1012 (2003). "The defense," we have said, "addresses situations in which employees disobey safety rules despite the employer's diligent communication and enforcement." Asplundh Tree Export Co. v. Dep't of Labor & Indus., 145 Wn. App. 52, 62, 185 P.3d 646 (2008). When the defense is asserted successfully, it defeats the Department's claim, even though the Department has proved all the elements of a violation. Asplundh Tree Export, 145 Wn. App. at 62. An employer that asserts this defense has the burden of proving all four elements of the defense. Asplundh Tree Export, 145 Wn. App. at 62.

The four elements of the defense are as follows:

> (5)(a) No citation may be issued under this section if there is unpreventable employee misconduct that led to the violation, but the employer must show the existence of:

(i) A thorough safety program, including work rules, training, and equipment designed to prevent the violation;

(ii) Adequate communication of these rules to employees;

(iii) Steps to discover and correct violations of its safety rules; and

(iv) Effective enforcement of its safety program as written in practice and not just in theory.

RCW 49.17.120.

In finding of fact 7, the Board found that "Potelco's safety program was not thorough, and equipment necessary to implement the required protective grounding was not provided to all workers."[8] In finding of fact 8, the Board found that "Potelco's safety program and its rules were not adequately communicated to its employees."[9]

In its merits briefing, Potelco argues that neither one of these findings was supported by substantial evidence in the record. However, at oral argument on September 17, 2015, counsel for Potelco conceded that a reasonable trier of fact could find, based on the record, that the training provided by Potelco was insufficient insofar as it concerned EPZ zones. For this reason, and for the reasons set forth below, we conclude that both findings are, in fact, supported by substantial evidence in the record.

By the plain language of RCW 49.17.120(5)(a), a "thorough safety program" must include "equipment designed to prevent the violation," and it must be adequately communicated to employees. If these directives are not met, the defense of "unpreventable employee misconduct" cannot be successfully asserted.

Potelco's safety manual, which was designated as part of the record on appeal, directs that, in dealing with downed power lines, "personal protective grounds must be installed on both sides of the work location, and all workers must wear approved rubber

---

[8] BR at 3.
[9] BR at 3.

gloves or stand on conductive mats."[10] Notably, though, rubber gloves may only be used "on 5,000 volts or less between phases," WAC 296-45-325(9), and the voltage at the Tiger Mountain worksite was 12,470 phase to phase.[11]

Moreover, Larry Rupe, Potelco's safety director, testified that gloves cannot be used as the primary protection in Washington and that the Tiger Mountain crew "should have had a mat," though he was not certain if the crew actually had a mat.[12] According to Bill Enger, the foreman of the Tiger Mountain crew, the crew did not have an EPZ mat that night; he also noted that mats were not made available to employees at that time by Potelco. This evidence suggests that Potelco did not have a thorough safety program.

Other evidence indicates that Potelco failed to adequately communicate its safety program to its employees. While Potelco offered evidence of its efforts to communicate to employees its work rules, including information regarding the use of EPZs, testimony elicited from its employees suggests that these efforts were inadequate. For instance, both Enger—the foreman of the crew[13]—and Richartz mistakenly believed that the use of "bracket grounding" was appropriate under the circumstances. Notably, Enger had been employed by Potelco for 11 years and Richartz for 7 years. And yet, neither one was aware that use of an EPZ was required under the circumstances.

We conclude that substantial evidence supports the challenged findings of fact. Consequently, we conclude that these findings support the challenged conclusion of law,

---

[10] Exhibit 1 at 11-14; BR Rupe at 17.
[11] BR Richartz at 56.
[12] BR Rupe at 20, 82.
[13] "In cases involving negligent behavior by a supervisor or foreman which results in dangerous risks to employees under his or her supervision, such fact raises an inference of lax enforcement and/or communication of the employer's safety policy." Brock v. L.E. Myers Co., High Voltage Div., 818 F.2d 1270, 1277 (6th Cir. 1987); see generally Wash. Cedar, 119 Wn. App. at 911-13 (affirming a Board decision that "specifically followed . . . Brock").

wherein the Board rejected Potelco's defense of "unpreventable employee misconduct."
In view of this, we hold that the superior court did not err in adopting the Board's findings
of fact and conclusion of law.[14]

Affirmed.

_Trickey, J_

WE CONCUR:

_Spearman, C.J._                    _Leach, J._

---

[14] Potelco assigns error to the superior court's award of statutory attorney fees to the Department as the prevailing party on administrative appeal. We decline to grant Potelco appellate relief with regard to the award of attorney fees.