

FILED
NOVEMBER 15, 2018
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LANZCE G. DOUGLASS, INC., a Washington Corporation, | ) ) ) | No. 35399-1-III |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| WASHINGTON DEPARTMENT OF LABOR AND INDUSTRIES, | ) ) ) | |
| Respondent. | ) | |

FEARING, J. — Lanzce G. Douglass appeals from the Board of Industrial Insurance Appeals' and the superior court's upholding of a Department of Labor & Industries citation for failing to enforce a safe work environment for subcontractor employees. We find substantial evidence to sustain the Board of Industrial Insurance Appeals' conclusion and affirm.

FACTS

General contractor Lanzce G. Douglass, Inc. (Douglass) hires subcontractors to build houses on its behalf. Lanzce Douglass is the company's president and owner. He has operated the company for over twenty years and has been involved in hundreds of

building projects. Douglass employs five to ten workers and constructs around seven

houses contemporaneously. In 2014, Douglass built a residence on Cypress Court in

Spokane.

Brad Sollie, an employee of Douglass, acted as the Cypress Court project's

foreman. Sollie managed other projects simultaneously. Sollie hired subcontractors,

ordered materials, and visited the numerous projects to monitor work. Sollie reported

directly to Lanzce Douglass and the two met three to four mornings per week to discuss

the progress of various projects. Brad Sollie visited the Cypress Court jobsite every two

to three days.

Lanzce Douglass hired a subcontractor, Richard Neilson, to frame the Cypress

Court house. Richard Neilson is the president and owner of Richard Neilson, Inc.

(Neilson, Inc.). Douglass and Neilson lacked a written subcontract. Neilson maintained

snippets of a manual outlining its employee safety program. Neilson did not provide

Douglass this partial safety manual.

On December 17, 2014, a neighbor in the Cypress Court neighborhood e-mailed,

to a safety supervisor at the Department of Labor and Industries (DLI), a photograph of a

man working on the Douglass residence. The photograph, taken from across the street,

depicted a man on a platform lifted by a Skytrak forklift. The platform lacked a guardrail

in violation of Washington Industrial Safety and Health Act of 1973, chapter 49.17 RCW

(WISHA) standards. A WISHA regulation requires guardrails for work platforms raised

with forklifts and for working surfaces over four feet above the ground. WAC 296-863-40060(1)(b); WAC 296-155-24609(2)(a).

DLI inspector Sheri Hadwiger visited the Cypress Court construction site on the morning of December 18, 2014. As she approached the site, Hadwiger espied a worker, holding a nail gun, on an elevated platform on the Skytrak forklift without a guardrail. Hadwiger recognized the work activity as consistent with the neighbor's photograph shot the previous day. From the street, she photographed the man on the platform and another man working on the ground directly underneath the platform. The ground-standing worker cut trim and handed the trim to the platform sited worker.

Sheri Hadwiger saw a white truck drive onto the Cypress Court construction site and stop in front of the residence in progress. The truck's panel read "Lanzce Douglass." Administrative Record (AR) (Oct. 22, 2015) at 132.

During her December 18 visit, Sheri Hadwiger approached the Cypress Court site and identified herself to the man on the Skytrak platform. She inspected the lift's platform, observed the platform to extend twelve feet in the air, saw rounds of nails stacked on the platform, and confirmed the absence of a basket or guardrail on the platform.

Sheri Hadwiger connoitered the outside of the Cypress Court construction site to identify any other potential safety hazards. She observed an extended unprotected edge on the house's backside where an opening for a slider door had been framed four feet

3

above the ground. This edge lacked a guardrail. This unguarded edge violated the regulation demanding guardrails for work platforms raised with forklifts and for working surfaces over four feet above the ground. As Hadwiger conducted the inspection, a worker installed a guardrail for the edge in an attempt to abate the violation.

DLI inspector Sheri Hadwiger next inspected the house's interior. The stairs leading to the second story of the residence lacked handrails, and the walking area on the second level lacked a middle guardrail. A step leading to the garage exceeded the permissible height for missing a ramp or intermediate step.

At some unidentified time Neilson provided DLI two documents, each dated November 12, 2014. The first document was a "SUB-CONTRACTOR'S WARRANTY STATEMENT," in which Neilson guaranteed to Douglass that the former's work and materials would be free from defects for one year. EX. 12. The next document was a "SUB-CONTRACTOR'S SAFETY STATEMENT," in which Neilson, Inc. certified to Douglass that Neilson, Inc. instructed all employees working on the site in company safety policy and procedures and that Neilson, Inc. complied with safety requirements. Ex. 13.

On December 18, 2014 and as a result of Sheri Hadwiger's inspection, DLI cited Neilson, Inc. for three WISHA violations. The citation against Neilson, Inc. is not at issue in this appeal, and both parties proceed on the assumption of the validity of the citation.

4

On December 19, Sheri Hadwiger, on behalf of DLI, commenced an investigation to determine whether Douglass met its duty as a general contractor to ensure a safe workplace. As part of the investigation, Hadwiger spoke with Lanzce Douglass. She asked Lanzce Douglass for documents to determine whether his construction company met its duty of care, such as records about the subcontractor, any safety agreements with the subcontractor, and Douglass' own safety program. Lanzce Douglass promised to provide Hadwiger with the records, but neither he nor his company ever did.

On March 6, 2015, DLI cited Douglass for one violation of WAC 296-155-100(1)(a) based on Douglass' failure to establish, supervise, and enforce a safe work environment for its subcontractor and its employees in a manner effective in practice. The citation accused Douglass of exposing workers to three hazards: (1) the elevated platform of the Skytrak forklift at a height of ten feet where the worker worked without a guardrail or bucket, (2) the unprotected edge on the backside of the house where framers worked, and (3) the lack of a handrail on the stairway leading to the second floor of the house.

## PROCEDURE

On April 28, 2015, Douglass appealed the citation to the Board of Industrial Insurance Appeals (Board). The Board, through a hearings judge, conducted an evidentiary hearing. Richard Neilson and Lanzce Douglass testified at the hearing.

During the DLI hearing, Richard Neilson testified that his company maintained a

5

written but general fall protection plan posted on a power pole right next to the Cypress Court jobsite. Richard Neilson conceded the lack of any site-specific fall protection plan for the Cypress Court project. The contractor must post at the jobsite a site-specific fall protection work plan when workers are exposed to fall hazards of ten or more feet. WAC 296-155-24611(2)(a)(vii).

Richard Neilson also admitted that he only had portions of the required written accident prevention plan. He believed his company's full accident prevention plan had been stored in a trailer, but was stolen from the trailer. Neilson had not recently provided this written accident prevention plan to Douglass. Contractors must develop formal written accident prevention plans tailored to the needs of particular operations and to the hazards involved at those operations. WAC 296-800-14005.

Richard Neilson further testified that he purchased, before the Cypress Court project, a basket for his company's Skytrak forklift, which basket attached to the machine's lift mechanism. The basket's purpose was to safely lift workers who needed to toil at an elevated height. Richard Neilson claimed that someone purloined the railings for the basket, which left the standing platform unprotected. Richard Neilson stated the theft occurred before Neilson began work on the Cypress Court house and that the company had not replaced the railings. Richard Neilson estimated that the construction company maintained the Skytrak forklift at the jobsite without a basket for ten days.

6

At the DLI evidentiary hearing, Lanzce Douglass testified to general familiarity with Washington State rules and regulations relating to construction safety. Lanzce Douglass testified, however, that his construction company's foreman, Brad Sollie, oversaw subcontractor safety. Lanzce Douglass avowed that his company required each subcontractor to sign a statement that it knew and would obey Washington safety regulations. Lanzce Douglass testified that Neilson provided him a copy of its safety manual several years earlier. Lanzce Douglass kept the manual in a file he maintained for Neilson. Douglass received no fall protection plan or accident prevention plan from Neilson.

Lanzce Douglass further testified that his construction firm retained a general safety plan for all its jobsites. Lanzce Douglass conceded that he did not know the content of the safety plan, since he was "not totally up on a hundred percent of the law." AR (Oct. 22, 2015) at 80-81. Lanzce Douglass stated that he conducted no conversations with Richard Neilson regarding safety expectations at the jobsite and did not know if any Douglass representative spoke with Richard Neilson about worker safety.

On February 1, 2016, the hearings judge issued a proposed decision and order to affirm the DLI citation against Douglass. In the decision, the hearings judge rejected the credibility of Neilson, Inc.'s partial safety documents. The judge concluded that Douglass failed to establish a program to ensure an effective, safe work environment. The judge characterized the discrete safety violations at the Cypress Court project as

7

readily viewable for anyone to see. The judge noted Richard Neilson's testimony that

workers used the Skytrak to lift materials to the second floor and found that workers

commonly used the Skytrak in its dangerous condition.

The hearings judge entered three findings of fact important to this appeal. The

findings read that Douglass:

> 5. . . . [d]id not take effective steps to discover and correct
> violations of safety rules related to the use of: guardrails on [the] platform
> of a SkyTrak boom lift vehicle; inadequate guardrail systems on open-sided
> walking and working surfaces; and, inadequate stair-rails.
> 6. . . . [k]new or, through the exercise of reasonable diligence, could
> have known of the presence of the three jobsite events . . . .
> 7. . . . [d]id not adequately communicate its safety rules to workers
> on its jobsite at 1415 Cypress Court, in Spokane, Washington, regarding
> use of the SkyTrak boom lift vehicle or construction and use of guardrail
> and stair-rail systems.

AR at 38. The hearings judge concluded that Douglass violated WAC 296-155-

100(1)(a) by failing to establish, supervise, and enforce, in a manner which is

effective in practice, a safe and healthful working environment.

On February 19, 2016, Douglass filed a petition for review with the Board of

Industrial Insurance Appeals. The Board denied Douglass' petition for review and

adopted the hearings judge's decision and order as its own. Douglass filed an appeal of

the Board's decision with the superior court. The superior court affirmed the Board and

the issuance of the citation.

LAW AND ANALYSIS

This appeals court reviews Board's decisions de novo, standing in the same position as the superior court. *Asplundh Tree Expert Co. v. Department of Labor & Industries*, 145 Wn. App. 52, 56-57, 185 P.3d 646 (2008). Thus, we review the Board's decision based on the agency record and not the superior court's ruling. *Robison Construction Inc. v. Department of Labor & Industries*, 136 Wn. App. 369, 373, 149 P.3d 424 (2006). Although review is de novo, deference is given to an agency's interpretation of a regulation within its area of expertise. *Asplundh Tree Expert Co. v. Department of Labor & Industries*, 145 Wn. App. at 56-57. Washington courts liberally construe WISHA rules to achieve its stated purpose of ensuring safe and healthful working conditions for all Washington workers. *Frank Coluccio Construction Co. v. Department of Labor & Industries*, 181 Wn. App. 25, 36, 329 P.3d 91 (2014).

We grant the Board's findings of fact conclusive effect if supported by substantial evidence. *Erection Co. v. Department of Labor & Industries*, 160 Wn. App. 194, 202, 248 P.3d 1085 (2011). Substantial evidence is evidence that would persuade a fair-minded individual of the truth of the matter. *Erection Co. v. Department of Labor & Industries*, 160 Wn. App. at 202. We view the evidence and its reasonable inferences in the light most favorable to the prevailing party. *Erection Co. v. Department of Labor & Industries*, 160 Wn. App. at 202. We then review whether the findings of fact support the conclusions of law. *Erection Co. v. Department of Labor & Industries*, 160 Wn. App. at

202.

DLI cited Douglass for a serious violation of WAC 296-155-100(1)(a). DLI bears

the burden of proving that Douglass violated WAC 296-155-100(1)(a). *J.E. Dunn*

*Northwest Inc. v. Department of Labor & Industries*, 139 Wn. App. 35, 49-50, 156 P.3d

250 (2007). The regulation provides:

> (1) It is the responsibility of management to establish, supervise, and
> enforce, in a manner which is effective in practice:
> (a) A safe and healthful working environment.

WAC 296-155-100. A serious violation exists:

> [I]f there is a substantial probability that death or serious physical
> harm could result from a condition which exists, or from one or more
> practices, means, methods, operations, or processes which have been
> adopted or are in use in such workplace, unless the employer did not, and
> could not with the exercise of reasonable diligence, know of the presence
> of the violation.

RCW 49.17.180(6).

On appeal, Douglass does not contend that any violation was not a serious

violation, assuming any violation occurred. Douglass contends the evidence does not

support a conclusion that it failed to establish, supervise, or enforce, in an effective

manner and in practice, a safe working environment. We disagree.

DLI argues that Douglass' safety program must be ineffective in practice and, in

turn, Douglass violated WAC 296-155-100(1)(a) simply because its subcontractor

Neilson committed three WISHA violations. We question whether the authorities cited

by DLI support this contention. We also posit that if WISHA or regulations thereunder intended to impose strict liability on a general contractor for all violations of a subcontractor, a statute or regulation would so read. Nevertheless, we affirm the Board on other grounds.

When considering whether a general contractor fulfilled its duty to maintain a safety program effective in practice, the Board may look at the number and seriousness of safety violations. *In re Mediterranean Pacific Corp.*, No. 06 W0162, 2007 WL 3054885, at *3 (Wash. Bd. of Indus. Ins. Appeals June 28, 2007). Another consideration includes steps a general contractor undertakes to identify safety hazards. *In Re: Exxel Pac. Inc.*, No. 96 W182, 1998 WL 718040, at *10 (Wash. Bd. of Indus. Ins. Appeals July 6 1998). A general contractor's steps to discover or correct safety violations are inadequate when it infrequently performs unannounced inspections or when it inconsistently disciplines workers caught violating safety rules. *Potelco, Inc. v. Department of Labor & Industries*, 194 Wn. App. 428, 435, 377 P.3d 251 (2016). DLI may also consider efforts of the general contractor to communicate safety requirements and regulations. *In Re: Exxel Pac. Inc.*, 1998 WL 718040, at *10. Douglass produced evidence of its safety protocols, including the subcontractor's warranty statement and safety statement. Lanzce Douglass testified that he required all subcontractors to sign these statements and to abide by safety regulations. Nevertheless, the Board reasonably found that these documents failed to credibly police the safety habits of subcontractors. Douglass presented no information

that it ensured that Neilson provided a safe working environment. Richard Neilson only testified to an incomplete safety program manual.

Douglass appointed Brad Sollie as the Cypress Court project's foreman. According to Lanzce Douglass, Sollie visited the site every two to three days to ensure the planned progress of the project and to confirm that subcontractor employees followed safety rules and regulations. Nevertheless, Sollie never testified. Douglass presented no evidence as to whether Sollie ever checked for compliance with safety regulations.

Douglass presented no evidence regarding efforts to communicate safety requirements and regulations to Neilson. Lanzce Douglass testified he had no conversations with the subcontractor regarding safety and did not know if anyone else did. Without the documents on which Douglass sought to rely, Douglass identified no current agreements between it and Neilson, Inc. regarding safety at the construction site. The totality of these facts supplied substantial evidence that Douglass' safety program, to the extent it existed, was not effective in practice at maintaining a safe work environment as the Board found.

DLI also carried the burden of proving that Douglass knew, or through the exercise of reasonable diligence, could have known of the safety regulations violated by its subcontractor. Reasonable diligence involves several factors including an employer's obligation to inspect the work area, to anticipate hazards to which employees may be exposed, and to take measures to prevent the occurrence. *Erection Co. v. Department of*

12

*Labor & Industries*, 160 Wn. App. at 206-07 (2011). Constructive knowledge of a violative condition may be demonstrated in numerous ways such as evidence showing that the violative condition was readily observable or in a conspicuous location in the area of the employer's crews. *Erection Co. v. Department of Labor & Industries*, 160 Wn. App. at 207.

The Board reasonably affirmed that Douglass should have known of Neilson's safety violations due to the obvious nature of the violations. A bystander could view the violations outside the residence from across the street. Testimony established the Skytrak forklift had been at the site for ten days. Richard Neilson stated that the guardrail was taken from the lift before the subcontractor took the forklift to the Cypress Court site. The hearings judge heard no evidence that any worker stood on the forklift platform before December 18, but, since the forklift with the missing guard sat on the worksite for more than one week, Douglass supervisors should have anticipated the unsafe use of the lift. Douglass supervisors should have also been present inside the house to observe the unsafe work conditions. Even if Douglass knew or should have known of only one of the three violations, the evidence supports the citation.

A regulation requires safety inspections "at least weekly." WAC 296-155-110(9)(a). Douglass emphasizes this regulation by arguing that all three safety violations may have not arisen until the day of Sheri Hadwiger's visit or the day preceding the visit. Nevertheless, the regulation only refers to a maximum allowable passage of time for an

inspection. Under some circumstances, the contractor should inspect more often, particularly when it does not know if a subcontractor maintains a current safety plan. The unsafe forklift had been present for more than one week. Hadwiger saw a truck with "Lanzce Douglass" on the side the day of her inspection.

Douglass emphasizes that DLI carried the burden of proving that Douglass lacked effective management of the safety of onsite workers and that DLI provided no affirmative testimony as to a lack of proper management. Douglass also highlights that DLI carried the burden of showing that Douglass should have known of safety violations and DLI provide no affirmative showing of when Douglass should have first seen violations. DLI did not present evidence as to how often Douglass supervisors were present in order to see violations. But Douglass was in the best position to supply evidence of its management and supervisory efforts since it knew best as to its conduct. When information necessary to prove what is exclusively within the knowledge of one of the parties, the burden would be on the party possessed of that knowledge to make the proof. *Cedar River Water & Sewer Dist. v. King County*, 178 Wn.2d 763, 779, 315 P.3d 1065 (2013). Regardless, DLI effectively cross-examined Richard Neilson and Lanzce Douglass to show the lack of any ongoing safety efforts by Neilson, Inc. or Douglass. A contractor cannot ignore the duty of frequently appearing at the jobsite to inspect for unsafe conditions and then argue that DLI lacks evidence as to if and when the contractor knew or should have known of violations.

No. 35399-1-III
*Douglass v. Dept of L&I*

CONCLUSION

We affirm the trial court's and the Board's citation against Douglass.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, A.C.J.

15