[No. 31722-2-II.  Division Two.  August 9, 2005.]

LEGACY ROOFING, INC., *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

358

*Richard M. Slagle* (of *Slagle Morgan, L.L.P.*), for appellant.

*Terry D. Peterson*; and *Robert M. McKenna, Attorney General*, and *Bourtai B. Hargrove, Assistant*, for respondent.

¶1 QUINN-BRINTNALL, C.J. — In this appeal, residential roofing contractor Legacy Roofing Company, Inc. (Legacy),[1] raises three challenges to a Department of Labor and Industries (L&I) citation for its employee's failure to wear fall protection gear while on a roof at a jobsite, a violation of WAC 296-155-24510.

¶2 For the first time on appeal, Legacy asserts (1) that L&I did not establish a prima facie case of a serious violation of the Washington Industrial Safety and Health Act of 1973 (WISHA)[2] because it failed to prove that the company had actual or constructive knowledge of its employee's violative conduct and (2) that the "effective in practice" prong of the "unpreventable employee misconduct" affirmative defense statute, RCW 49.17.120(5)(a), is unconstitutionally vague. Legacy also contends, as it did below, that the Board of Industrial Insurance Appeals (Board) erred in determining that Legacy did not sustain its burden to prove the elements of an affirmative statutory "unpreventable employee misconduct" defense.

¶3 Because Legacy admitted below that its employee had violated WAC 296-155-24510 by failing to wear fall protection gear while working on a roof at one of its jobsites, we do not address Legacy's untimely claim that L&I failed to provide substantial evidence of employer knowledge. And because substantial evidence supports the Board's determination that Legacy failed to prove three elements of the statutory "unpreventable employee misconduct" defense, we do not address Legacy's constitutional vagueness challenge to one of these elements. Accordingly, we reject Legacy's appeal and affirm the citation and penalty.

FACTS

¶4 On December 30, 2000, at around 2:00 P.M., William P. Smith, a WISHA safety and health inspector, visited Lega-

---

[1] Legacy was formerly known as Bel-Kirk Roofing Co., Inc., dba Legacy Roofing Co., Inc., a name that appears in the administrative record.

[2] Ch. 49.17 RCW.

cy's work site in McCormick Woods, a subdivision in Port Orchard, Kitsap County. Smith noticed that Victor Garcia, a Legacy employee, was working on the roof of the house without wearing fall protection gear.[3] An unused fall protection lanyard was lying on the roof and a fall protection work plan was posted on the side of the building. Because the eave-to-ground height of the roof was over 11 feet, the employee's failure to wear fall protection gear while working on the roof was a violation of WAC 296-155-24510.[4]

¶5 On March 22, 2001, L&I cited Legacy for violating WAC 296-155-24510 and alleged that the violation was a repeat serious violation because Legacy had been cited for the same violation on January 15, 1999. L&I assessed a $600 penalty.

¶6 Legacy appealed the citation and penalty. L&I reassumed jurisdiction under RCW 49.17.140(3), which states, "[i]f the director [of L&I] reassumes jurisdiction ... any redetermination shall be completed and corrective notices of assessment of penalty, citations, or revised periods of abatement completed within a period of thirty working days," and on May 8, 2001, L&I issued a corrective notice of redetermination (CNR) affirming the citation and penalty. Legacy then appealed to the Board asserting an "unavoidable employee misconduct" defense. Administrative Record/Clerk's Papers (AR/CP) at 45.

¶7 An industrial appeals judge (IAJ) heard Legacy's appeal on March 19, 2002. At the hearing, the IAJ heard testimony from Smith (L&I); Clifford E. Hurn, Legacy's general manager; and Jose Medrano, Legacy's bilingual safety compliance officer. Hurn and Medrano testified regarding Legacy's written safety policy, Legacy's procedure for communicating the policy to its employees, its proce-

---

[3] Smith took a photograph as he approached. Garcia quickly disappeared beyond the peak of the roof.

[4] Under WAC 296-155-24510, when employees are exposed to a hazard of falling from a location 10 feet or more in height, an employer is required to ensure that fall restraint, fall arrest systems, or positioning device systems are provided, installed, and implemented according to the requirements outlined in the regulations.

dures for discovering and reporting violations, and its "progressive disciplinary policy" of increasing fines and eventual termination of an employee after three violations.[5]

¶8 The IAJ agreed with Legacy that the violation was the result of unavoidable employee misconduct and vacated the CNR. L&I appealed, and in a December 4, 2002 Decision and Order, the Board reversed the IAJ's decision and reinstated the citation and penalty.

¶9 Legacy then appealed the Board's decision to the Kitsap County Superior Court under RCW 49.17.150(1). On March 30, 2004, the superior court affirmed the Board's decision to uphold the citation and penalty.

¶10 Legacy appeals.

## ANALYSIS

VIOLATION

¶11 Legacy first contends that L&I failed to establish a prima facie WISHA violation because it did not present substantial evidence to prove that Legacy had actual or constructive knowledge that Garcia was working on the roof without the required safety gear. But Legacy waived this challenge by failing to timely raise it below.

¶12 On appeal to the superior court, Legacy's counsel stated: "As you can tell, [Legacy's] argument was unavoidable employee misconduct. There wasn't a question as to whether . . . the violation took place." Report of Proceedings at 2-3. Despite this concession, Legacy attempts for the first time in its brief on appeal to assert that L&I did not prove a WISHA violation occurred.

■ ¶13 In general, we will not review claims of error not raised below. RAP 2.5(a). More importantly, RCW 49-.17.150(1) specifically limits appellate review of issues

---

[5] Legacy's employees were pieceworkers paid per "square" installed. An employee's first violation of the safety program resulted in a fine of $200. The second violation resulted in a $400 fine and the third in a $600 fine and termination. The fines were to be deducted from the employee's "bonus" pay, which was to be 100 percent of base pay for a job if there were no violations.

that an appellant did not first present to the Board: "No objection that has not been urged before the board shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." RCW 49.17.150(1). *See D.A. Collins Constr. Co. v. Sec'y of Labor*, 117 F.3d 691, 695 (2d Cir. 1997) (employer did not raise the issue of the Secretary's prima facie case in its petition for review waiving this argument on appeal); *see also Dep't of Labor & Indus. v. Nat'l Sec. Consultants, Inc.*, 112 Wn. App. 34, 37, 47 P.3d 960 (2002) (holding Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678, preemption claim could not be raised on appeal because it was not argued before the Board). Legacy does not argue that extraordinary circumstances excuse its failure to timely object and, particularly in light of its counsel's concession that the violation occurred, none appears in the record before us. Legacy has failed to preserve its challenge to L&I's alleged failure to present a prima facie case of Legacy's violation of WAC 296-155-24510, and we decline to review it.

AFFIRMATIVE DEFENSE

¶14 As it did below, Legacy contends that the Board erred in rejecting its statutory affirmative "unpreventable employee misconduct" defense.

■ ■ ¶15 In 1999, our state legislature provided an employer with a statutory affirmative "unpreventable employee misconduct" defense to certain WISHA violations. Once L&I makes a prima facie case that a violation has occurred (or the employer admits the violation), the employer may be relieved of responsibility for the violation by proving that it has:

> (i) A thorough safety program, including work rules, training, and equipment designed to prevent the violation;

> (ii) Adequate communication of these rules to employees;

> (iii) Steps to discover and correct violations of its safety rules; and

(iv) Effective enforcement of its safety program as written in practice and not just in theory.

RCW 49.17.120(5)(a); *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 911, 83 P.3d 1012, *review denied*, 152 Wn.2d 1003 (2004). The employer has the burden of proving the elements of this affirmative defense. *See In re Jeld-Wen of Everett*, No. 88 W144, Bd. of Indus. Ins. Appeals (Wash. Oct. 22, 1990) (citing *Brock v. L.E. Myers Co., High Voltage Div.*, 818 F.2d 1270, 1276 (6th Cir. 1987)).

¶16 Here, although the Board determined that Legacy proved it had devised an adequate safety program satisfying RCW 49.17.120(5)(a)(i), it also determined that Legacy had not satisfied the other three requirements of RCW 49-.17.120(5)(a). Specifically, the Board found Legacy's defense failed in three respects: Legacy failed to prove that it had (1) adequately communicated the rules to its employees (RCW 49.17.120(5)(a)(ii)); (2) made adequate efforts to discover violations of the safety rules (RCW 49.79.120(5)(a)(iii)); and (3) established effective procedures for enforcement of its program in practice (RCW 49.17.120(5)(a)(iv)).

¶17 On appeal, we review the Board's administrative decision directly, based on the record before the agency. *Dep't of Labor & Indus. v. Denny*, 93 Wn. App. 547, 550, 969 P.2d 525 (1999). And we apply a substantial evidence standard to our review of Legacy's proof of its unpreventable employee misconduct defense. *See Wash. Cedar*, 119 Wn. App. at 911 (citing *Miller v. City of Tacoma*, 138 Wn.2d 318, 323, 979 P.2d 429 (1999)).

¶18 Under RCW 49.17.150(1), the "findings of the board or hearing examiner where the board has denied a petition or petitions for review with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." And " '[s]ubstantial evidence' is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107

Wn.2d 693, 712, 732 P.2d 974 (1987). We accept the Board's unchallenged finding that the safety program Legacy had created, including work rules, training, and equipment designed to prevent the violation was "thoroughly outlined" and, therefore, adequate to satisfy RCW 49.17.120(5)(a)(i). But we review the record to determine whether Legacy presented substantial evidence of the other subsections of RCW 49.17.120(5)(a). Our review establishes that it did not.

COMMUNICATION OF RULES TO EMPLOYEES

■ ¶19 The Board found that as of December 30, 2000, Legacy had not effectively communicated its otherwise adequate and appropriate safety rules to its employees. *See* RCW 49.17.120(5)(a)(ii). Substantial evidence supports this finding. Although Legacy presented testimony from Hurn and Medrano regarding the communication of its safety program to its employees, that evidence established that the planned communication was not occurring during December 2000, when the violation occurred. Hurn, Legacy's general manager, testified:

> [W]e review fall protection work plans with [employees], and we provide them with a little more concise safety rules. Also employee agreements that spell out, even more focused, what we expect of [employees] on the job in the way of conduct, safety, production . . . and those documents would be included in our disciplinary policy.
>
> And then we have weekly safety meetings. And on first hire, we always have them watch a video . . . that was made by the State of Washington. And it's available both in English and Spanish.

Administrative Record/Transcript (AR/Tr.) at 52-53.

¶20 But the newly hired, full-time safety officer, Medrano,[6] testified that he did not begin holding safety meetings until January 2001. This was after the violation occurred in late December 2000. Medrano testified that:

> What I basically was doing was kind of talking to the guys. Especially because I was . . . still in, you know, a little bit in

[6] Legacy hired Medrano in September 2000.

training myself. I didn't really hold those meetings, basically, because I was talking to [the employees], you know, "Okay. This is what we need to do." Like . . . being tied off; ladders; eye protection; all that kind of stuff. After January I started doing [the meetings].

AR/Tr. at 85-86. Thus, Legacy failed to establish that it effectively communicated its safety rules to Garcia and other employees *before* December 30, 2000. Given the discrepancy between Hurn's testimony of the ideal company practice and Medrano's testimony as to Legacy's actual practice at the time of the violation, substantial evidence supports the Board's finding that Legacy did not meet its burden of proving it had effectively communicated the company's safety requirements to its employees to satisfy RCW 49.17.120(5)(a)(ii) at the time of the violation.[7]

DISCOVERY AND CORRECTION OF VIOLATIONS

¶21 The Board also found that Legacy's steps to discover and correct safety violations were inadequate to deter future violations. *See* RCW 49.17.120(5)(a)(iii). The Board found that the company's unannounced inspections were infrequent and that the employees caught violating the rules were not consistently counseled or fined. Substantial evidence supports the Board's finding.

¶22 Hurn testified that Legacy would have seven to eight roofing jobs at any given time and that Medrano was to visit each site each day and double back on sites. But Medrano testified that he visited only three to six sites per day. And Legacy's documentation showed only 93 site visits between October 18, 2000, and January 3, 2001. Medrano attempted to explain this discrepancy by stating that he did not fill out a report if no one was working at the site during

---

[7] The Board stated that there was no evidence "in the record" that the information in the safety manual was communicated to employees; the Board noted that it did not consider Exhibit 9 (Spanish language documents bearing employee Garcia's signature indicating that he had read and understood various safety rules) because the exhibit was never offered nor admitted into evidence at the hearing before the IAJ. AR/CP at 3.

his visit. But on eight of the safety checklists that he did fill out, Medrano had noted that no one was working.[8]

¶23 The Board also found that Legacy's documentary evidence showed inconsistent penalty enforcement and did not show that each employee who was cited for a violation was actually fined.

¶24 Essentially, Legacy's argument was that it was doing the best it could to enforce its safety program and, therefore, it should not be penalized. But under the controlling authority of *Washington Cedar*, Legacy had the burden of proving the affirmative defense it chose to assert. Legacy did not dispute that it had not completed the process of implementing—putting into practice—its program in December 2000, when L&I issued the citation at issue in this appeal. At that time, Legacy had hired a full-time safety officer only a few months before, and this officer, who was still in training, was not yet holding the weekly safety meetings the company's program envisioned. The record reveals that at the time of the violation Legacy was not yet satisfying its own inspection goals as outlined by Legacy's general manager nor was it consistently penalizing employees who violated its safety policy.

EFFECTIVE ENFORCEMENT OF SAFETY PROGRAM *IN PRACTICE*

¶25 Finally, Legacy challenges most strenuously the Board's finding that Legacy's program was not effectively enforced " 'in practice.' " *See* RCW 49.17.120(5)(a)(iv).

■ ■ ¶26 To establish unpreventable employee misconduct, the employer must show that its safety program is effective " 'in practice as well as in theory.' " *Wash. Cedar*, 119 Wn. App. at 912 (quoting *Brock*, 818 F.2d at 1277). In order for the employer to prove that the enforcement of its safety program is effective, it must prove that the employee's misconduct was not foreseeable. *Wash. Cedar*, 119 Wn.

---

[8] The Board also noted, again based on substantial evidence, that while Hurn testified that other Legacy employees participated in enforcement of the safety program, there was no documentation indicating that anyone besides Medrano inspected Legacy's work sites.

App. at 913 (citing *Jeld-Wen*, No. 88 W144; *Brock*, 818 F.2d at 1277; *Austin Bldg. Co. v. Occupational Safety & Health Review Comm'n*, 647 F.2d 1063, 1068 (10th Cir. 1981); and *Mineral Indus. & Heavy Constr. Group v. Occupational Safety & Health Review Comm'n*, 639 F.2d 1289, 1293 (5th Cir. 1981)).

■■ ¶27 Although prior similar violations do not absolutely bar use of the unpreventable employee misconduct defense, such violations are evidence that the employee conduct was foreseeable and, therefore, preventable. *Wash. Cedar*, 119 Wn. App. at 913. For example, in *Washington Cedar*, we affirmed the Board's decision that the unavoidable employee misconduct defense did not apply. There, the employer's two prior fall protection final violations supported the Board's determination that the employer's program was not effectively enforced. *Wash. Cedar*, 119 Wn. App. at 912-13.[9] Legacy argues that the standard that the Board applied for "effective enforcement in practice" is an impossible one to satisfy because the Board assumed that the mere fact of the violation showed that Legacy's program was not effective in practice, eviscerating the defense. Moreover, Legacy argues that *Washington Cedar* is distinguishable because Legacy had only one prior "final violation" at the time the Board made its determination. Legacy suggests that this was insufficient to prove its program was not effective in practice.[10] *Compare Wash. Cedar*, 119 Wn. App. at 913 (two prior violations support Board's conclusion that enforcement not effective in practice). We do not find Legacy's argument persuasive. Although it had only one prior identical violation on January 15, 1999, and not two as in *Washington Cedar*, it was nonetheless sufficiently foreseeable that one of Legacy's employees would again

_____

[9] We did note that there was additional evidence that the employer was not effectively enforcing its safety program. *Wash. Cedar*, 119 Wn. App. at 913.

[10] Legacy was subsequently cited for additional fall protection violations and again raised the unavoidable employee misconduct defense, but the Board struck the exhibits so indicating (Nos. 12, 13, and 14, which had been admitted by the IAJ) because the violations were not yet final at the time of the hearing.

work on the roof of a house without wearing required fall safety equipment.

¶28 In sum, substantial evidence supports the Board's determination that Legacy did not prove each element of its statutory affirmative "unpreventable employee misconduct" defense, and we affirm.[11]

¶29 Affirmed.

MORGAN and BRIDGEWATER, JJ., concur.

Review denied at 156 Wn.2d 1028 (2006).

---

[11] Legacy also contends that the "effective in practice" standard under RCW 49-.17.120(5)(a)(iv) is unconstitutionally vague and that, as a constitutional issue, it may be raised for the first time before this court. But we do not address Legacy's vagueness challenge because the case can be resolved on other grounds: As demonstrated above, Legacy also failed to satisfy the "employee communication" and "discovery and correction" prongs of the defense. *See, e.g., Isla Verde Int'l Holdings, Inc. v. City of Camas,* 146 Wn.2d 740, 752, 49 P.3d 867 (2002) (noting that this court should decline to reach a constitutional question where a case can be resolved on other grounds). Moreover, although Legacy refers in its brief to an expected amicus brief, none was ever filed with this court, and Legacy does not brief the issue. Finally, although the parties did not brief the point, it is unclear to us how generally accepted principles for analyzing the constitutionality of statutes that regulate or proscribe conduct necessarily apply in a statutory affirmative defense context.