# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | No. 56186-7-II |
| Respondent, | |
| v. | |
| ROOF DOCTOR, INC. DBA ROOF DOCTOR, INC. TACOMA, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, A.C.J. — Roof Doctor, Inc. (Roof Doctor) was performing a commercial roofing job in Tacoma in 2018. The Washington State Department of Labor and Industries (the Department) received a referral indicating that some of Roof Doctor's employees were not following fall protection requirements. After an inspection by both a safety compliance officer and an asbestos technical specialist, Roof Doctor was cited for several safety violations, including violations of fall protection regulations, a ladder regulation, and several asbestos regulations.

After a proposed decision by an Industrial Appeals Judge (IAJ), Roof Doctor appealed to the Board of Industrial Insurance Appeals (the Board), arguing, in part, that the asbestos penalties should be reduced, the fall protection violation was a result of unpreventable employee misconduct, and that it did not violate the ladder regulation. The Board ultimately affirmed Roof

Doctor's violations, as modified,[1] and reduced the penalty assessments for most of the asbestos violations. On cross appeal, the superior court affirmed the citations and the Department's original penalty assessments for the asbestos violations, reversing the Board's penalty assessments.

We hold that the Board did not abuse its discretion in its penalty assessments for the asbestos violations and reverse the superior court's order as to these assessments. We further hold that Roof Doctor did not establish the affirmative defense of unpreventable employee misconduct for the fall protection violation and that Roof Doctor violated the ladder regulation. Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

FACTS

I. BACKGROUND

Roof Doctor is a company that installs and repairs roofs, and sometimes performs maintenance work on roofs, such as cleaning. It is based in western Washington and performs about 3,500 roofing jobs per year. The company is owned by Ken Slater Sr. and is now managed by his children—Shane Slater, Tara Monahan, and Ken Slater Jr.[2]

When the siblings took over management of the company, they sought to improve Roof Doctor's safety policies. They modified Roof Doctor's disciplinary policy for safety violations, as well as the company's policy awarding a monthly safety bonus to employees if their entire crew passes random safety inspections. Each manager conducts three or four random safety inspections per day. Random inspections are also conducted by Roof Doctor's now full-time safety inspector, Bill Hoke. Not only does Hoke conduct three to five inspections per day and keep records of his

---

[1] The Board adjusted the classification that the Department assigned to the fall protection violation.

[2] Although Ken Jr.'s name is not exactly the same as Ken Sr.'s name, he is referred to as Ken Jr.

inspections, he also runs a safety orientation for new Roof Doctor employees. New employees are also given handouts on safety procedures, including specific information about fall protection and ladder safety.

## II. DEPARTMENT CITATIONS

Roof Doctor began a commercial roofing job in Tacoma in February 2018. On the first day of this job, Hoke inspected the site and found no violations. However, the next day, the Department sent a safety compliance officer, Edgar Alvarez, after receiving a referral alleging that the employees were working on a three-story building without fall protection. When Alvarez arrived, he saw about nine workers moving around on the roof. None of the workers were tied off. The roof was flat in some areas and appeared to have a low slope in other areas. Alvarez also saw workers on the edge of the lower roof throwing materials into a dumpster on the ground below.

Once the workers on the roof knew that Alvarez was present, they began tying themselves off to comply with fall protection requirements. Alvarez spoke with one of the three foremen on the site and obtained consent to be on the worksite. Alvarez walked around with the foreman and took measurements. Based on Alvarez's inspection, the Department cited Roof Doctor for two violations:

> 1-1: The employer did not ensure that employees used an appropriate fall protection system, in violation of WAC 296-155-24611(1)(a).

> 2-1: The employer did not ensure that the extension ladder used to access the upper roof extended at least three feet above the landing surface, in violation of WAC 296-876-40030(1).

On the day of the inspection, Alvarez sent a referral for potential asbestos violations regarding the roofing material. Christopher Pyke, an asbestos technical specialist for the Department, inspected the site the following day. As Pyke approached the site, he saw a worker

throwing material off of the roof into a truck. Pyke took samples of material that he found on the ground near the building. Based on Pyke's inspection, the Department cited Roof Doctor for seven violations:

> 1-1: The employer performed asbestos roofing work without establishing a regulated area where asbestos exposure may exceed the permissible exposure limit, in violation of WAC 296-62-07711(1).
>
> 1-2: The employer did not ensure that an asbestos-competent person was supervising the asbestos work, in violation of WAC 296-62-07711(8).
>
> 1-3: The employer did not provide protective clothing to employees, in violation of WAC 296-62-07717(1)(a).
>
> 1-4: The employer did not obtain a written good faith inspection for asbestos, in violation of WAC 296-62-07721(2)(e).
>
> 1-5: The employer did not ensure that employees had received asbestos awareness training prior to performing asbestos roofing work, in violation of WAC 296-62-07722(1)(c).
>
> 1-6: The employer did not maintain surfaces as free as practicable from accumulations of waste containing asbestos, in violation of WAC 296-62-07723(1).
>
> 2-1: The employer did not conduct an initial air monitoring assessment, in violation of WAC 296-62-07709(3)(a)(ii).

Shane Slater, the general manager, disciplined the entire Roof Doctor crew at the Tacoma job site pursuant to the company's safety violation discipline policy.

III. APPEAL AND HEARING

Roof Doctor appealed the Department's citations, and an IAJ held a hearing. At the hearing, the Department introduced records going back as far as 1997 that showed Roof Doctor's prior safety violations. These included fall protection violations, including a fall protection violation as recent as 2017.

Pyke testified regarding the Department's penalty calculations for the asbestos violations. Regarding Violation 1-1, Pyke explained how he determined the violation's probability rating.[3] About nine employees were physically handling the roofing material for three days. None of the employees had any asbestos training and did not know that the roofing material contained asbestos. However, most of the employees were experienced roofers and knew generally that asbestos was a hazard. In addition, the employees were outdoors and there was light precipitation, which could mitigate the hazard from the material. The employees wore varying levels of protective clothing and did not appear to be rushed, but the area they were removing was relatively large. In all, these factors resulted in a probability rating of 2, which is a moderate probability that an injury, illness, or disease will occur. WAC 296-900-14010.[4]

Pyke arrived at the same result for Violation 1-2. For Violations 1-3 and 1-5, he had assigned a higher probability rating, but he could not explain any reason for the difference. For Violation 1-6, Pyke assigned a higher probability rating because the roofing material had been left

---

[3] A violation's probability rating describes the likelihood that a violation will cause an injury, illness, or disease, and the rating is relevant to calculating the monetary penalty for a given violation. WAC 296-900-14010.

[4] WAC 296-900-14010 was amended in 2019. Because this amendment does not impact our analysis, we cite to the current version. *See* WSR 19-01-097 (effective Jan. 1, 2019).

on the ground around the building, exposing people other than the employees. Violation 1-4 required a statutory minimum fine per day and was not subject to a probability rating.

Roof Doctor presented expert testimony by Douglas Henry to rebut the Department's asbestos penalty calculations. In Henry's opinion, there was a low probability that the employees "would be exposed to even a measurable concentration of airborne asbestos fibers. And thereby, . . . any risk to their health on that day was . . . almost nonexistent" since the primary means of exposure for the employees would have been inhalation. Clerk's Papers (CP) at 858. Henry acknowledged that Roof Doctor had not conducted air monitoring at the job site.

Roof Doctor argued that the fall protection violation was not a willful violation and, further, that it was a result of unpreventable employee misconduct, which is an affirmative defense to the violation. In addition, Roof Doctor raised several issues with the asbestos penalty calculations. One alternative that Roof Doctor presented was to reduce the probability for Violations 1-1, 1-2, 1-3, 1-5, and 1-6 from 2 to 1. Lastly, based on testimony that a parapet wall surrounding the roof was 12 to 18 inches high, Roof Doctor argued that it did not violate the ladder regulations because the ladder extended three feet above the height of the roof, even if it did not extend three feet above the top of the parapet wall.

The IAJ issued a proposed decision and order affirming the violations. Based on Pyke's inability to explain the probability rating of 3 for Violations 1-3 and 1-5 and the Department's concession that the penalty should be reduced, the IAJ assigned these violations a probability rating of 2 and recalculated the penalties. However, the IAJ found that a probability rating of 3 for Violation 1-6 was appropriate and affirmed the penalty assessment for that violation.

## IV. BOARD DECISION

Roof Doctor petitioned for review of the proposed decision and order, renewing the arguments it presented to the IAJ. The Board granted the petition.

The Board issued a decision and order affirming the citations as modified. The Board reclassified the fall protection violation as a serious repeat violation. The Board agreed with the IAJ's conclusion that Roof Doctor failed to establish that the fall protection violation was caused by unpreventable employee misconduct "due to the lengthy history of fall protection violations." *Id.* at 72. Regarding the asbestos penalties, the Board further reduced the probability rating, explaining: "[b]ecause the Department didn't rebut Mr. Henry's opinion that there was almost no risk to the workers' health, we are persuaded that the probability for all of [the] asbestos violations (except 1-4) should be reduced from 2 to 1." *Id.* at 74.[5] The corresponding penalty for each of these violations was, therefore, reduced. Lastly, the Board affirmed the ladder violation because "[t]he 'landing surface' is not the upper roof; it is the top of the parapet wall. The worker must first step *over* the parapet wall in order to reach the upper roof." *Id.* at 73.

## V. FURTHER APPEALS

Roof Doctor and the Department cross appealed to the superior court. The superior court affirmed the citations and "affirmed" the penalty assessments as reflected in the citations, which reversed the Board's calculations. *Id.* at 1715.

Roof Doctor appeals.

---

[5] The Board did not acknowledge any reduction for Violation 1-6 from a probability of 3, as affirmed in the IAJ's proposed order and decision, prior to the Board's decision.

## DISCUSSION

### I. STANDARD OF REVIEW

We review the Board's final decision based on the administrative record, sitting in the same position as the superior court. *Pro-Active Home Builders, Inc. v. Dep't of Lab. & Indus.*, 7 Wn. App. 2d 10, 16, 465 P.3d 375 (2018); *Legacy Roofing, Inc. v. Dep't of Lab. & Indus.*, 129 Wn. App. 356, 363, 119 P.3d 366 (2005). We review whether substantial evidence supports the Board's findings of fact. *Pro-Active*, 7 Wn. App. 2d at 16. Substantial evidence is evidence "sufficient to persuade a fair-minded, rational person" that the premise is true. *Id.* "If there is substantial evidence to support the findings, we then determine whether the findings support the conclusions of law." *Frank Coluccio Constr. Co. v. Dep't of Lab. & Indus.*, 181 Wn. App. 25, 35, 329 P.3d 91 (2014).

We do not reweigh the evidence when reviewing for substantial evidence. *Potelco, Inc. v. Dep't of Lab. & Indus.*, 7 Wn. App. 2d 236, 243, 433 P.3d 513 (2018). Rather, we view the evidence and reasonable inferences in the light most favorable to the party that prevailed before the Board. *Potelco*, 7 Wn. App. 2d at 243-44; *Pro-Active*, 7 Wn. App. 2d at 16.

### II. ASBESTOS PENALTY CALCULATIONS

The Department argues that its own penalty calculations are reviewed for an abuse of discretion, that the Board erred by not properly deferring to the Department's calculations, and that the Department did not abuse its discretion in calculating the asbestos penalties. Roof Doctor argues that the Board's penalty calculations are supported by substantial evidence. We hold that the Board did not abuse its discretion in its determination of the asbestos penalties.

A. STANDARD OF REVIEW

As an initial matter, we must address the Department's argument that its own penalty calculations are reviewed for an abuse of discretion. In *Ostrom Mushroom Farm Co. v. Department of Labor & Industries*, 13 Wn. App. 2d 262, 276, 463 P.3d 149 (2020), this court stated that "[w]e review the Department's penalty determination for an abuse of discretion." The Department argues that this statement means that we should review the Department's calculations for an abuse of discretion, rather than reviewing the Board's penalty determination.

In *Ostrom*, the Board made a finding that the Department's penalty assessment was appropriate. *Id.* at 270. Therefore, when the court was reviewing the Department's penalty determination, it was also reviewing the Board's decision on the penalty. The other cases cited by the Department similarly do not support its contention about the standard of review. *See Potelco*, 7 Wn. App. 2d at 253 (stating "[w]e review the penalty amount for an abuse of discretion," and concluding that "[t]he [Board] did not abuse its discretion" in its penalty calculation); *Danzer v. Dep't of Lab. & Indus.*, 104 Wn. App. 307, 311, 16 P.3d 35 (2000) (Board had affirmed Department's penalty assessment).

In addition, the Board has previously rejected this very argument by the Department. In the Board's decision *In re Apex Roof Systems, LLC*, No. 13 W0200, at 2 (Wash. Bd. of Indus. Ins. Appeals July 30, 2015), the Board stated:

> The Department incorrectly argues that the Washington Court of Appeals' *Danzer* decision states that the Board must apply the abuse of discretion standard when it reviews WISHA penalties assessed by the Department. *Danzer* does not support the Department's argument. *Danzer* states that under RCW 49.17.150(1), substantial evidence is the standard of review courts must apply when reviewing Board decisions regarding WISHA issues. This standard of review does not apply

to the Board's review of the Department's decisions. Under RCW 49.17.140(3),[6] our review of the Department's WISHA citations and notices are to be handled as appeals in industrial insurance cases. The burden of proof in industrial insurance cases is a preponderance of the evidence. Therefore the burden of proof for the employer is not an abuse of discretion, but rather the standard is whether a preponderance of the evidence supports the citation and penalty. We must determine whether there is sufficient evidence in the record to affirm the Department's citation and resulting penalty.

(Internal footnotes omitted.) Although this decision is not binding, we may consider it as persuasive authority. *O'Keefe v. Dep't of Lab. & Indus.*, 126 Wn. App. 760, 766, 109 P.3d 484 (2005).

The Department argues that the Board's failure to defer to the Department's penalty calculations "subverts the Legislature's intent that the Department act as 'the final arbiter of penalties.'" Br. of Resp't at 28 (quoting *Brennan v. Occupational Safety and Health Rev. Comm'n*, 487 F.2d 438, 442 (8th Cir. 1973)). This is so, the Department contends, because the Department is vested with the same penalty-setting authority as the Commission in *Brennan*. In that case, shortly after OSHA was enacted, the Secretary of Labor sought to limit the power of the Occupational Safety and Health Review Commission to modify penalties proposed by the

---

[6] This provision is currently found at RCW 49.17.140(4). *See* LAWS OF 2021, ch. 253, § 2. This subsection provides, in relevant part:

a notice of appeal filed under this section shall stay the effectiveness of any citation or notice of the assessment of a penalty pending review by the board of industrial insurance appeals, . . . The board of industrial insurance appeals shall afford an opportunity for a hearing in the case of each such appellant and the department shall be represented in such hearing by the attorney general and the board shall in addition provide affected employees or authorized representatives of affected employees an opportunity to participate as parties to hearings under this subsection. The board shall thereafter make disposition of the issues in accordance with procedures relative to contested cases appealed to the state board of industrial insurance appeals.

RCW 49.17.140(4).

Secretary. *Brennan*, 487 F.2d at 439. The 8th Circuit concluded that "the Commission shall be the final arbiter of penalties if the Secretary's proposals are contested and that, in such a case, the Secretary's proposals merely become advisory." *Id.* at 442. However, as Roof Doctor points out, the Department has left out language from *Brennan* indicating that the Commission is more comparable to the Board rather than the Department. *See, e.g*, *id.* at 439-41 (explaining that the Commission is an independent adjudicatory agency that conducts hearings and issues an order, based on findings of fact, to either affirm, modify, or vacate the Secretary's OSHA citation or proposed penalties).

It would not be logical to review the Department's penalty assessment where, as here, the Board did not affirm the assessment. Therefore, when the penalty is reviewed for an abuse of discretion, this refers to the Board's determination, as we review the Board's decision. *See Potelco*, 7 Wn. App. 2d at 253; *Pro-Active*, 7 Wn. App. 2d at 16. We conclude that we review the Board's penalty determination for abuse of discretion, rather than the Department's determination.[7]

---

[7] In a statement of additional authorities, the Department asserts that a recent decision from this court, *Department of Labor & Industries v. Higgins*, 21 Wn. App. 2d 268, 505 P.3d 579 (2022), supports its position that the Department's penalty assessments are reviewed for an abuse of discretion. In that case, the issue on appeal was the proper standard of review for decisions by the Department Director regarding whether to readjust disability benefits for claims that have been closed for seven or more years. *Higgins*, 21 Wn. App. 2d at 275. Based on the statutory language that " 'the director *may* . . . readjust the rate of compensation,' " the court concluded that this decision by the Director was reviewed on appeal for an abuse of discretion, a conclusion that the Board itself agreed with in one of its decisions. *Id.* at 275-76 (quoting RCW 51.32.160(1)(a)) (emphasis added). Here, however, the penalty assessment for a safety violation is not a "[d]iscretionary administrative decision[ ] *under Title 51 RCW*," so *Higgins* is not instructive. *Id.* at 276 (emphasis added).

B. LEGAL PRINCIPLES

The Department has authority to assess penalties against employers in violation of safety rules upon consideration of "the number of affected employees of the employer being charged, the gravity of the violation, the size of the employer's business, the good faith of the employer, and the history of previous violations." RCW 49.17.180(8).[8] Guidance for calculating a base penalty and any appropriate adjustments to the base penalty are provided in WAC 296-900-14010 and WAC 296-900-14015. The gravity of a violation is determined by multiplying the severity of the violation by its probability, each on a scale from 1 to 3. WAC 296-900-14010. The severity rate is based on the level of the most serious injury, illness, or disease that could be caused by the violation, and the probability rate is based on the likelihood that the injury, illness, or disease will occur. WAC 296-900-14010.

The Department considers the following factors when determining a violation's probability factor:

[1.] Frequency and amount of exposure.
[2.] Number of employees exposed.
[3.] Instances, or number of times, the hazard is identified in the workplace.
[4.] How close an employee is to the hazard, i.e., the proximity of the employee to the hazard.
[5.] Weather and other working conditions.
[6.] Employee skill level and training.
[7.] Employee awareness of the hazard.
[8.] The pace, speed, and nature of the task or work.
[9.] Use of personal protective equipment.
[10.] Other mitigating or contributing circumstances.

---

[8] RCW 49.17.180 was amended in 2021. Because these amendments do not impact our analysis, we cite to the current version of the statute. *See* LAWS OF 2021, ch. 253, § 4.

*Id.* A probability of 3 means that the likelihood of injury or illness is relatively high, 2 means that the likelihood is moderate, and 1 means that the likelihood is relatively low. *Id.* As explained above, we review the Board's penalty assessment for an abuse of discretion. *See Potelco*, 7 Wn. App. 2d at 253; *Pro-Active*, 7 Wn. App. 2d at 16. An abuse of discretion occurs when a decision is arbitrary, based on untenable grounds, or based on untenable reasons. *Danzer*, 104 Wn. App. at 326.

C. ANALYSIS

The Department argues that the Board erred in reducing the probability rating for the asbestos violations, thereby reducing the penalty assessments. The Board reduced the probability ratings "[b]ecause the Department didn't rebut Mr. Henry's opinion that there was almost no risk to the workers' health." CP at 74.

Pyke provided a thorough assessment of the probability for Violations 1-1 and 1-2 using factors taken from WAC 296-900-14010. Overall, the factors resulted in a moderate likelihood of injury or illness as some factors weighed in favor of Roof Doctor and some against. WAC 296-900-14010. However, Pyke could not explain why Violations 1-3 and 1-5 were rated a higher probability, and the Department later conceded that these violations warranted a recalculation. On the other hand, Henry's opinion that the risk to the employees' health was "almost nonexistent" was due to his belief that they very likely were not exposed to airborne asbestos fibers, and the employees' exposure would have had to be through inhalation. CP at 858. He conceded that there had not been air monitoring at Roof Doctor's Tacoma job site.

The Board did not abuse its discretion in reducing the probability rating for the asbestos violations. Pyke walked through the factors and came to a middle ground, but Henry's testimony

13

appears to go to the final factor listed in WAC 296-900-14010: "Other mitigating or contributing circumstances." If the nature of the material made it unlikely that the employees inhaled asbestos fibers, this appears to be a mitigating circumstance that justifies a probability rating of 1, or a low likelihood of injury or illness. *See* WAC 296-900-14010. We are to view the evidence and reasonable inferences in the light most favorable to the party that prevailed before the Board, and here, Roof Doctor had successfully argued that the probability for the asbestos violations (other than 1-4) should be reduced to 1 based on Henry's testimony. *See Potelco*, 7 Wn. App. 2d at 243-44; *Pro-Active*, 7 Wn. App. 2d at 16. As a result, the Board's penalty assessments based on the reduction of the probability rating for the asbestos violations were not an abuse of discretion.

The Department argues that, because Henry's testimony was rejected "in a nearly identical case," it did not provide an adequate basis for the Board to reduce the penalties. Br. of Resp't at 39. In the unpublished case cited by the Department, Henry similarly testified that it was unlikely that asbestos fibers were airborne as a result of employees removing vinyl flooring tiles in an apartment building. *1Up Floors, LLC. v. Dep't of Lab. & Indus.*, No. 80403-1-I, slip op. at 1, 11 (Wash. Ct. App. Nov. 23, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/804031.pdf. Division One of this court rejected this reasoning in regards to the seriousness of the violation as there was no way to know the concentration of fibers in the air because the employer had not conducted air monitoring, and the employees could have been exposed through absorption since they were not wearing protective clothing. *Id.* at 11-12. However, that case differed in an important way—the employees were working in an enclosed space indoors, whereas the Roof Doctor employees here were outside with light precipitation, which can mitigate the risk posed by the asbestos fibers. *Id.* at 1. And in

14

discussing the probability rating for the violation, the court provided Henry's testimony as a factor that would possibly reduce the likelihood of illness or disease. *Id.* at 16.

We hold that the Board did not abuse its discretion in its assessment of the asbestos penalties. Accordingly, we reverse the superior court's adjustment of the penalties for the asbestos violations.

### III. UNPREVENTABLE EMPLOYEE MISCONDUCT

Roof Doctor argues that we should look to whether an employee has prior safety violations, rather than the employer, and that Roof Doctor's past violations were not sufficient to bar application of the affirmative defense of unpreventable employee misconduct. The Department argues that Roof Doctor's history of fall protection violations, and the specific employees' prior misconduct, supports the Board's conclusion that Roof Doctor had not established this affirmative defense. We hold that Roof Doctor failed to establish that the fall protection violation was due to unpreventable employee misconduct.

### A. LEGAL PRINCIPLES

Under RCW 49.17.120(5)(a), no citation may be issued against an employer if unpreventable employee misconduct caused the violation. To establish this affirmative defense, the employer must show:

> (i) A thorough safety program, including work rules, training, and equipment designed to prevent the violation;
>
> (ii) Adequate communication of these rules to employees;
>
> (iii) Steps to discover and correct violations of its safety rules; and
>
> (iv) Effective enforcement of its safety program as written in practice and not just in theory.

15

RCW 49.17.120(5)(a). "In order to show that a safety program is effective in practice, the employer must prove that the employee's misconduct was an isolated occurrence and was not foreseeable." *Pro-Active*, 7 Wn. App. 2d at 20. "Although prior similar violations do not absolutely bar use of the unpreventable employee misconduct defense, such violations are evidence that the employee conduct was foreseeable and, therefore, preventable." *Legacy Roofing*, 129 Wn. App. at 367.

B. ANALYSIS

Roof Doctor argues that there was not substantial evidence to support the Board's conclusion that Roof Doctor failed to establish the affirmative defense of unpreventable employee misconduct. In the Board's decision, it explained that the IAJ concluded that Roof Doctor failed to establish this affirmative defense "due to the lengthy history of fall protection violations," and the Board agreed. CP at 72. This goes to the fourth element: whether Roof Doctor effectively enforces its safety program in practice. *Pro-Active*, 7 Wn. App. 2d at 20.

In *Washington Cedar & Supply Co., Inc. v. Department of Labor and Industries*, 119 Wn. App. 906, 909-10, 83 P.3d 1012 (2003), the Department issued a citation to the employer after an employee on the roof of a building was not wearing fall protection gear. Department records showed two prior fall protection violations by the employer within three years of the violation at issue. *Id.* at 910. This court explained that, although the two prior violations "may not constitute conclusive evidence that the employee misconduct was foreseeable and preventable, it does provide sufficient evidence to support the Board's conclusion." *Id.* at 913. And in *Legacy Roofing*, this court found that one prior violation made it "sufficiently foreseeable" that an employee would fail to use the required fall protection equipment. 129 Wn. App. at 367-68.

Here, the Department compiled records regarding Roof Doctor's prior violations dating back to 1997. Many of these were fall protection violations, including a fall protection violation in 2017. Although Roof Doctor has made improvements to its safety plan, it has failed to prove that the violations at issue here were isolated and not foreseeable. *See id.*; *Washington Cedar*, 119 Wn. App. at 913. Therefore, substantial evidence supports the Board's determination that Roof Doctor failed to establish that the fall protection violation here was a result of unpreventable employee misconduct.[9]

Roof Doctor's argument that the relevant inquiry regarding foreseeability should be whether an employee has prior violations is not supported by the law. Roof Doctor argues that this was the approach taken by this court in *Pro-Active*, when the employer saw an employee committing a safety violation earlier that day, and this court held that the misconduct was, therefore, foreseeable. 7 Wn. App. 2d at 21. But this was not an emphasis on the employee's behavior; rather, the court was determining whether the employer could have corrected the misconduct. *Id.* at 21-22. Any prior violations by the employer were not discussed in that case, but an employer's prior violations can provide substantial evidence as to whether its safety program

---

[9] Roof Doctor argues that evidence of an employer's prior violations cannot both (1) support an element of the Department's prima facie case and (2) negate an element of an affirmative defense of unpreventable employee misconduct. The Department argues that Roof Doctor has waived this argument, but that it still fails if we consider it. Regardless of whether Roof Doctor raised this argument below, Division One of this court has recently explained that "the Department does not bear the burden to prove that the violation was foreseeable" in establishing a serious WISHA safety violation. *Central Steel, Inc. v. Dep't of Lab. & Indus.*, 20 Wn. App. 2d 11, 19, 498 P.3d 990 (2021), *review denied*, 199 Wn.2d 1020 (2022). Therefore, Roof Doctor's argument, which relies on the idea that the Department's prima facie case and the unpreventable employee misconduct affirmative defense share an element of foreseeability, fails.

is effective in practice. *See Legacy Roofing*, 129 Wn. App. at 367-68; *Washington Cedar*, 119 Wn. App. at 913.

We hold that the Board properly rejected Roof Doctor's affirmative defense of unpreventable employee misconduct.

IV. "LANDING SURFACE"

Roof Doctor argues that it complied with the relevant ladder regulations because the ladder at the Tacoma job site extended three feet above the surface of the roof. The Department argues that Roof Doctor did not comply with the ladder requirements because the ladder did not extend three feet above the parapet wall surrounding the roof. We agree with the Department.

A. LEGAL PRINCIPLES

Under WAC 296-876-40030(1), "a ladder used to access an upper level [must have] the side rails extended at least three feet (0.9 m) above the landing surface if the ladder length permits." If the ladder length is not long enough to extend three feet above the landing surface, the employer must take extra steps to ensure that the ladder is safe to use. WAC 296-876-40030(2)(a)-(c).

A landing is "[a]ny area such as the ground, roof, or platform that provides access or egress to a ladder." WAC 296-876-099.[10] In *Cobra Roofing Service, Inc. v. Department of Labor & Industries*, 122 Wn. App. 402, 410, 97 P.3d 17 (2004), Division Three of this court held that the

---

[10] WAC 296-876-099 was amended in 2020. Because this amendment does not impact our analysis, we cite to the current version. *See* WSR 20-09-146 (effective Oct. 1, 2020).

top surface of a parapet wall was the "upper landing surface," under former versions of the regulations,[11] when a ladder was leaned against the parapet wall.

B. ANALYSIS

Here, it is undisputed that the ladder did not extend three feet above the top of the parapet wall. Accordingly, the Board affirmed the ladder violation because "[t]he 'landing surface' is not the upper roof; it is the top of the parapet wall." CP at 73.

Roof Doctor claims that the roof is the landing surface because the parapet wall was 12 to 18 inches tall, "meaning the workers could have, and likely did, dismount the ladder by stepping over the wall and onto the roof's surface." Br. of Appellant at 35-36. But viewing the evidence and reasonable inferences in the light most favorable to the Department, which prevailed on this issue, substantial evidence supports the Board's conclusion that the top of the parapet wall was the landing surface. As the court explained in *Cobra Roofing*, the idea that the roof is the landing surface is "untenable because it would allow the ladder to end flush with or below the top of the parapet wall if the wall rises three or more feet above the roof." 122 Wn. App. at 410. Roof Doctor argues that *Cobra Roofing* is not binding on this court, but we agree with the analysis in that case.

Roof Doctor further argues that there was no evidence of a violation because there is no evidence that the employees stepped onto and off of the top of the parapet wall. But the violation itself comes from the fact that the side rails of the ladder did not extend three feet above the landing

---

[11] The relevant regulations have since been amended, but the requirements and definitions in the current regulations are identical to their former counterparts. *Compare* former WAC 296-155-480(2)(a) (1996), *with* WAC 296-876-40030, *and* former WAC 296-155-47501(11) (1991), *with* WAC 296-876-099.

surface when the ladder was used to access an upper level. WAC 296-876-40030(1). This is undisputed.

We hold that substantial evidence supports the Board's conclusion that Roof Doctor violated the ladder regulation.

CONCLUSION

We hold that the Board did not abuse its discretion in its penalty assessments for the asbestos violations; therefore, we reverse the superior court on the issue of the asbestos penalties. We further hold that Roof Doctor did not establish the affirmative defense of unpreventable employee misconduct for the fall protection violation and that Roof Doctor violated the ladder regulation. Accordingly, we reverse the superior court in part and affirm in part.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

WORSWICK, J.

MAXA, J.